Linda S. Dalton appeals from her conviction of trafficking in cocaine, in violation of § 20-2-80, Code of Alabama 1975. Appellant was found guilty by a Madison County jury and was sentenced to 15 years' imprisonment, fined $250,000, and ordered to pay $100 to the Victims Compensation Fund.
The record reveals that Detective Marilyn Lacy of the Huntsville Police Department received a telephone call from an individual who identified herself as Bonnie Bevel of the Memphis (Tennessee) International Airport Drug Task Force. Bevel advised Lacy that Linda Dalton (appellant) and Timothy Rainey would be arriving at the Huntsville Airport on a specific flight and that they were suspected of transporting illegal drugs. According to Bevel, this suspicion was based upon a drug-courier profile. She had apparently received information from a source in Fort Lauderdale, Florida, whom she did not identify. The suspects had purchased airline tickets in Fort Lauderdale, with Huntsville as their destination. They had a layover in Memphis and changed flights. The source in Fort Lauderdale had advised Bevel that the suspects had made joint reservations, but had requested separate seating. Bevel advised Lacy that, during their layover in Memphis, the suspects did not speak to or associate with each other. Bevel gave Lacy the names and descriptions of the suspects, as well as their flight number and time of arrival in Huntsville.
After receiving this information, Lacy went to the airport, where she met with several other officers whom she had contacted in the meantime. The officers confirmed the suspects' flight. They also learned that the suspects had checked luggage on the flight. When the flight arrived, the officers identified appellant and Rainey, who were walking well apart from *Page 601 
one another, and they followed them to the luggage carousel in the baggage claim area. Rainey retrieved a small gray athletic-type bag from the carousel and, for some reason, the carousel became jammed and temporarily ceased to operate. He waited for two or three minutes and then walked in the direction of the exit, where he was detained by the officers. Appellant waited on the opposite side of the carousel for it to resume operation, and, when it did, she picked up a suit bag and a black suitcase and walked away in the opposite direction from that taken by Rainey. The officers approached appellant as she was departing, identified themselves, and informed her that they needed to talk to her. She did not respond.
Appellant and Rainey were then escorted by the officers out of the airport terminal, where they were placed in separate automobiles and were transported, along with their luggage, two blocks away to an airport security building. There, they were placed in separate rooms inside the building, where they remained until a drug detection dog[1] arrived 40 minutes to an hour later. The dog "alerted" to the black suitcase and to the gray athletic bag, indicating the presence of narcotics, but he had no reaction to the suit bag. The luggage was not searched at the airport. There apparently being some question as to the reliability of the dog, the officers transported appellant and Rainey, along with their luggage, to the Huntsville Police Academy, where the luggage was exposed to two more drug detection dogs. These dogs also "alerted" to the black suitcase and the gray athletic bag. (The record does not disclose the distance to the Huntsville Police Academy; however, the length of time involved indicates that it was considerable.)
After the dogs had sniffed the luggage at the police academy, a search warrant was issued, based on the information received from Bevel, the observations made by the police at the airport, and the positive reactions of the dogs, and the luggage was searched. The black suitcase contained what was subsequently determined to be 1,416.7 grams (approximately 3.1 pounds) of cocaine, while neither the gray athletic bag nor the suit bag was found to contain any contraband. Appellant and Rainey were then advised that they were under arrest.
Appellant contends that the trial court erred in denying her motion to suppress the cocaine discovered in the black suitcase. She argues that the discovery was the result of the unlawful detention of her person and luggage and, thus, that the fruits of the search of the luggage were tainted and should have been suppressed. Appellant also argues that her suppression motion should have been granted because, she says, the search warrant was defective. We agree with appellant that her detention was unlawful and that the cocaine should have been suppressed. Since our resolution of this case turns on the lawfulness of the detention, we will not address the warrant issue.
The investigatory stop authorized by Terry v. Ohio,392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), has been extended to airport searches and seizures for narcotics by United States v.Sokolow, 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989);Florida v. Royer; 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229
(1983); United States v. Mendenhall, 446 U.S. 544,100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). The decisions suggest a three-step approach for determining the constitutionality of the conduct of officers engaged in such investigatory stops: "(1) did the encounter rise to the level of a 'seizure,' and if not, was the subsequent search consensual? (2) was the investigatory stop, if there was one, based upon reasonable *Page 602 
suspicion? and (3) did the length of the detention exceed the permissible scope of a Terry investigatory stop?" 1 W. Ringel,Searches Seizures, Arrests and Confessions § 16.3, p. 16-13 (1988).
A brief non-border airport investigatory stop is permissible if "supported by a reasonable and articulable suspicion that the person seized is engaged in criminal activity." Reid v.Georgia, 448 U.S. 438, 440, 100 S.Ct. 2752, 2753,65 L.Ed.2d 890 (1980). Drug-courier profiles are useful investigatory tools, but do not automatically create a reasonable suspicion that will justify a Terry stop. United States v. Sokolow;United States v. Ballard, 573 F.2d 913 (5th Cir. 1978).[2] Could the officers, here, have reasonably suspected appellant of criminal activity on the basis of the information they possessed? We have difficulty answering this question affirmatively; however, for the purposes of this opinion, we will assume that the facts available to the officers provided them with a reasonable and articulable suspicion that appellant was engaged in criminal activity and justified an investigatory stop. See Reid v. Georgia; United States v. Mendenhall.
Even if the police have justification for a Terry stop, the detention must be temporary and must last no longer than is necessary to effectuate the purposes of the stop. United Statesv. Place, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983);Florida v. Royer. The scope of the stop is narrowly drawn and is limited to situations where the police detain an individual in order to determine who the individual is and to allow the individual to explain any suspicious actions or activities in which he is engaged. Florida v. Royer; United States v.Brignoni-Ponce, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607
(1975). We find, in the instant case, that the police officers' conduct exceeded the permissible limits of a Terry-type investigatory stop. Their conduct was clearly more intrusive, in duration and scope, than was necessary to effectuate an investigatory detention envisoned by Terry.
Finally, we address the question of whether the encounter between appellant and the police rose to the level of a seizure. A person has been seized within the meaning of the Fourth Amendment when, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. Florida v. Rodriguez,469 U.S. 1, 105 S.Ct. 308, 83 L.Ed.2d 165 (1984); Florida v.Royer; United States v. Mendenhall; United States v. Berry,670 F.2d 583 (5th Cir. 1982).[3] Applying the "free to leave" standard to the facts of the instant case, we conclude that appellant was seized by the police without probable cause, in violation of the Fourth Amendment. The circumstances were such that a reasonable person would have believed that he was not free to leave.
Here, the state does not contend, as in Royer, that the search of appellant's luggage was based upon appellant's consent but, rather, contends that it was based upon a warrant issued upon the probable cause established by the drug detection dogs' reactions. However, as in Royer, the event upon which the state seeks to justify the search occurred after appellant had been detained and taken, along with her luggage, to a security office. While we have concluded, for the purpose of this opinion, that the officers had reasonable and articulable suspicion to approach appellant for the purpose of briefly questioning her in an attempt to dispel or confirm their suspicion, we believe that escorting her outside the terminal; placing her in a separate car from that of Rainey; and transporting her some two blocks away to be held in a separate room for 40 minutes to an hour while a drug detection dog was acquired went beyond the limits established by Terry
and its progeny. For all practical *Page 603 
purposes, these events constituted an arrest. SeeRoyer, 460 U.S. at 503, 103 S.Ct. at 1327. There can be little doubt that a reasonable person in appellant's position would have believed that she was not free to leave and, in fact, Officer Lacy testified at trial that neither appellant nor Rainey would have been allowed to leave. The seizure of appellant was unreasonable under the Fourth Amendment and, as a consequence, the cocaine discovered and seized in the subsequent search of her luggage was inadmissible. We find that the trial court committed reversible error in denying appellant's motion to suppress the cocaine. Therefore, this cause is due to be, and it is hereby, reversed and judgment is rendered for appellant.
REVERSED AND JUDGMENT RENDERED.
All Judges concur.
[1] Specially trained dogs are frequently used to detect the presence of narcotics in luggage accompanying persons traveling by airline. See, e.g., United States v. Solis, 536 F.2d 880
(9th Cir. 1976); United States v. Bronstein, 521 F.2d 459 (2d Cir. 1975). An "alert" on luggage by a dog shown to be trained and reliable in detecting narcotics is deemed to constitute probable cause for an arrest or search. United States v. Race,529 F.2d 12 (1st Cir. 1976). Exposure of luggage in a public place to a trained dog does not constitute a search within the meaning of the Fourth Amendment. United States v. Place,462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983).
[2] For a discussion of drug-courier profiles, see United Statesv. Berry, 670 F.2d 583, 598, n. 17 (5th Cir. 1982) (en banc).
[3] This rule is commonly know as the "free to leave" standard. For a history of the development of the rule in the United States Supreme Court, see 1 W. Ringel, supra, § 16.3(a)(1), p. 16-14 through 16-18.