This case presents a familiar question, the legality of a police investigatory stop and the subsequent seizure of illegal drugs, and it requires us to review once again the right of police to detain persons who allegedly match a "drug courier profile."
Linda S. Dalton was convicted of trafficking in cocaine and was sentenced to 15 years' imprisonment and was fined $250,000. In a separate trial, Timothy Orlando Rainey was also convicted of trafficking in cocaine and received the same sentence.
The Court of Criminal Appeals reversed each conviction on the ground that the arresting officers had exceeded the permissible limits of an investigatory stop permitted under Terry v. Ohio,392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). See Dalton v.State, 575 So.2d 599 (Ala.Cr.App. 1989), and Rainey v. State,575 So.2d 606 (Ala.Cr.App. 1989). The State petitioned for certiorari review in both cases, arguing that the decisions of the Court of Criminal Appeals conflicted with United States v. *Page 604 Sokolow, 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). We granted review in both cases and consolidated the two cases for the purpose of oral argument. The issue argued before this Court was whether the duration and scope of the investigatory stop of Dalton and Rainey by the police were proper under Terryv. Ohio and United States v. Sokolow.
The facts are adequately set out in the opinion of the Court of Criminal Appeals and will not be restated here. The basic facts are that Dalton and Rainey were detained at the Huntsville airport because they fit a "drug courier profile." Huntsville police had received a telephone call from the Memphis International Airport Drug Task Force and had been told that Dalton and Rainey were flying to Huntsville and that their actions fit a "drug courier profile." The police went to the airport and arrived approximately 10 minutes before the arrival of Dalton and Rainey's flight. After Dalton and Rainey picked up their baggage, the police separated and detained Dalton and Rainey for approximately 40 minutes to an hour, when a narcotics-detecting dog arrived. That dog "alerted" on a suitcase that had been carried by Dalton. Upon opening the suitcase, the officers found 3.1 pounds of cocaine. Dalton was tried separately; after she was convicted, the Court of Criminal Appeals reversed her conviction, holding that the stop was impermissible. Based upon its holding in Dalton, that court reversed Rainey's conviction also.
Many of the basic facts of this case are similar to the facts in Sokolow: e.g., the investigatory stop was of an airline passenger, based upon facts that law enforcement officers said matched a "drug courier profile." Because the facts of this case are somewhat similar in some respects to those in Sokolow, we believe that a discussion of that case is appropriate, especially as the facts of that case relate to the length ofdetention.
In Sokolow, the defendant was detained at an airport in Hawaii because he fit a "drug courier profile." He was held from 6:30 p.m. until 9:30 p.m. before a narcotics-detecting dog arrived. Because the Drug Enforcement Agency agents there could not get a search warrant until the next morning, they let Sokolow go after detaining him for those three hours. The question in Sokolow was whether the initial stop was proper, and the Court, in upholding the investigatory stop and detention, wrote the following:
 "Our decision . . . turns on whether the agents had a reasonable suspicion that respondent was engaged in wrongdoing when they encountered him on the sidewalk. In Terry v. Ohio, 392 U.S. 1, 30, 88 S.Ct. 1868; 1884-85, 20 L.Ed.2d 889 (1968), we held that the police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause.
 "The officer, of course, must be able to articulate something more then an 'inchoate and unparticularized suspicion or "hunch".' Id., at 27, 88 S.Ct., at 1883. The Fourth Amendment requires 'some minimal level of objective justification' for making the stop. INS v. Delgado, 466 U.S. 210, 217, 104 S.Ct. 1758, 1763, 80 L.Ed.2d 247 (1984). That level of suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence. We have held that probable cause means 'a fair probability that contraband or evidence of a crime will be found,' Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983), and the level of suspicion required for a Terry stop is obviously less demanding than that for probable cause. See United States v. Montoya de Hernandez, 473 U.S. 531, 541, 544, 105 S.Ct. 3304, 3312, 87 L.Ed.2d 381 (1985).
 "The concept of reasonable suspicion, like probable cause, is not 'readily, or even usefully, reduced to a neat set of legal rules.' Gates, supra, 462 U.S., at 232, 103 S.Ct., at 2329. We think the Court of Appeals' effort to refine and elaborate the requirements of 'reasonable suspicion' in this case create unnecessary difficulty in dealing with one of *Page 605 
the relatively simple concepts embodied in the Fourth Amendment. In evaluating the validity of a stop such as this, we must consider 'the totality of the circumstances — the whole picture.' United States v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981). As we said in Cortez:
 " 'The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as fact-finders are permitted to do the same — and so are law enforcement officers.'
"Id., at 418, 101 S.Ct., at 695."
In Sokolow, the Court discussed the right of police officers to detain an individual when there is reasonable suspicion that that person is engaged in wrongdoing:
 "Respondent also contends that the agents were obligated to use the least intrusive means available to verify or dispel their suspicions that he was smuggling narcotics. Id. at 12-13, 21-23 [in respondent's brief]. In respondent's view, the agents should have simply approached and spoken with him, rather than forcibly detaining him. He points to the statement in Florida v. Royer, 460 U.S. [491] at 500, 103 S.Ct. [1319], at 1325-26 [75 L.Ed.2d 229 (1983)] (opinion of WHITE, J.), that 'the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time.' That statement, however, was directed at the length of the investigative stop, not at whether the police had a less intrusive means to verify their suspicions before stopping Royer. The reasonableness of the officer's decision to stop a suspect does not turn on the availability of less intrusive investigatory techniques. Such a rule would unduly hamper the police's ability to make swift on-the-spot decisions — here, respondent was about to get into a taxicab — and it would require courts to 'indulge in "unrealistic second-guessing".' [United States v.] Montoya de Hernandez, 473 U.S., at 542, 105 S.Ct., at 3311, quoting United States v. Sharpe, 470 U.S. 675, 686, 687, 105 S.Ct. 1568, 1576, 84 L.Ed.2d 605 (1985)."
490 U.S. at 10-11, 109 S.Ct. at 1587.
The Court of Criminal Appeals based its decision in these cases not on any invalidity of the initial stop, but upon the extensiveness of the detention. It held that "the police officers' conduct exceeded the permissible limits of aTerry-type investigatory stop," because "[t]heir conduct was clearly more intrusive, in duration and scope, than was necessary to effectuate an investigatory detention envisioned by Terry." We disagree.
Applying the principles of Sokolow, we hold that the Court of Criminal Appeals erred in determining that the detention in this case violated the defendant's constitutional rights. The intrusion here was not as extensive as that in Sokolow, and because the Huntsville police had such short notice (Dalton and Rainey were en route and would soon arrive), it was not unreasonable for the police to detain them 40 minutes to an hour for the narcotics-detecting dog to arrive. The rule is stated in Sokolow:
 "The reasonableness of the officer's decision to stop a suspect does not turn on the availability of less intrusive investigatory techniques. Such a rule would unduly hamper the police's ability to make swift on-the-spot decisions. . . ."
Under a different factual setting, of course, we might reach a different result. For instance, if the police had had a warning of several hours or days that suspected drug couriers were to arrive at the airport and narcotics-detecting dogs were readily available, then the least intrusive means might have been to have the dog already there, so that the amount of time between the stop and the dog's sniffing of the luggage would be minimal. Terry requires that the investigative methods employed be the least intrusive means reasonably available. See Floridav. Royer, supra. Of course, our holding in the present case is based in large part on the fact that the police did not have an opportunity to have *Page 606 
the dog immediately available at the airport when they stopped Dalton and Rainey.
For the above-stated reasons, the holding of the Court of Criminal Appeals — that the length of Dalton's detention was improper — was incorrect. The judgment, therefore, is reversed and this cause is remanded to that court for further proceedings consistent with this opinion.[1]
REVERSED AND REMANDED.
HORNSBY, C.J., and ALMON, SHORES, ADAMS, HOUSTON and STEAGALL, JJ., concur.
JONES, J., dissents.
[1] The detention issue was the only one addressed by the Court of Criminal Appeals, but the State spends much time, both in its brief in this case and in its brief in Rainey's case (Rainey v.State, 575 So.2d 606 (Ala. 1990)), arguing that Dalton and Rainey did not have standing to challenge the seizure of the cocaine because it was in Dalton's suitcase and Rainey had the claim ticket and the key. In Dalton's case, the State argues that she did not have standing to challenge the seizure because it was Rainey's suitcase. In Rainey's case, the State argues that he did not have standing to challenge the seizure because it was Dalton's suitcase. The Court of Criminal Appeals did not reach this issue, and did not reach several other issues, because its treatment of the detention issue resolved the entire case. On remand, the Court of Criminal Appeals will need to address these other issues. Of course, as to the standing issue, the State cannot have it both ways.