The appellant, Dallas Leon Sawyer, was convicted of trafficking in cannabis, a violation of § 13A-12-231(1), Code of Alabama 1975. He was sentenced to life imprisonment and was ordered to pay a $50,000 fine.
The state's evidence produced at the suppression hearing and at trial tended to show that on August 8, 1990, Danny Smith, the director of the Ninth Judicial Circuit Narcotics Task Force, received information from a reliable confidential informant that a shipment of marijuana was to be delivered to Wayne Ingram's residence in DeKalb County on August 9, 1990. Smith and members of the task force had previously received partially corroborated information (as recently as two weeks before) that Ingram's residence was a major distribution center for marijuana and that a previous shipment had been brought in by trailer. After receiving the tip on August 8, Smith contacted various members of the narcotics task force, notified them of the information that he had received, and set up surveillance of the residence.
On August 9, the Ingram residence was kept under surveillance most of the day. Between 2:15 and 2:45 p.m., Jim Mayes, a *Page 1037 
DeKalb County deputy sheriff who was assisting the ongoing surveillance, observed a two-toned grey Ford pick-up truck, with a U-Haul trailer attached, backing out of Ingram's garage at the rear of the residence.
After following the pick-up truck to nearby Fort Payne, Deputy Mayes contacted Mike James, another member of the narcotics task force, on his police radio and informed him of the location and description of the truck and trailer. Eventually, the two officers met, and Deputy Mayes pointed out the pick-up truck to Investigator James, who then resumed the pursuit. After following the truck through Fort Payne, James motioned the pick-up truck to pull over, identified himself as a deputy sheriff, and requested the driver of the truck, Darren Hall, to produce his license. Hall then consented to a search of the truck and the attached trailer. Investigator James discovered no physical evidence of drugs; however, the inside of the trailer smelled distinctly of marijuana and coffee grinds.
Investigator James then radioed Deputy David Miller, the narcotics detector dog handler and evidence technician of the task force, and requested that he bring the narcotic-sniffing dog to the scene. After arriving, Deputy Miller had the dog sniff the truck and trailer. When the dog "alerted" at the doors of the trailer, Deputy Miller opened the doors and detected the odor of marijuana.
Investigator Darrell Collins, who was joined by Deputy Mayes, later went to the Ingram residence around 4:35 p.m. to continue surveillance in an undercover vehicle. Around 5:01 p.m., Mayes and Collins observed a maroon and silver Chevrolet Silverado pick-up truck drive into Ingram's driveway and enter the garage. At 5:03 p.m., a taupe or brown Chevrolet Caprice automobile also drove into the garage. At 5:11 p.m., the Caprice automobile left the residence. Collins then radioed Fort Payne Deputy Chief of Police Wayne Parker, another member of the narcotics task force, to stop the automobile. Chief Parker blocked the road on which the Caprice automobile was travelling, while Investigator Collins turned on his blue light and motioned to the driver of the automobile, the appellant, to pull over.
Once the automobile was stopped, Collins approached the automobile, identified himself, and asked the appellant for his driver's license. Collins requested permission to search the car, which was denied. At that point, Collins radioed Deputy Miller and asked him to bring the narcotic-sniffing dog to the scene. When the dog sniffed the car, he indicated the scent of narcotics in the back seat and under the rear wheel well, but alerted predominantly at the tag area and locking mechanism of the trunk. Chief Parker then opened the trunk and observed three plastic bags that contained a plant material that appeared to be marijuana. A subsequent search of the Ingram residence resulted in the discovery of a large quantity of the same plant material. Laboratory analysis conducted before and during trial would later reveal that the plant material was indeed marijuana and that the total weight of the material in the appellant's trunk was 50.2 pounds, while the total weight of the marijuana confiscated from the Ingram residence was 238.4 pounds.
The appellant presents four issues on appeal.
 I
The appellant first contends that the trial court erred in overruling his numerous hearsay objections to the testimony of various state witnesses regarding information received from a confidential source. He also contends that, by allowing such testimony, his Sixth Amendment right to confront witnesses against him was violated.
At trial, the state called several members of the narcotics task force and a DeKalb County police officer to the stand to chronologically explain their individual roles in the events leading up to and following the appellant's arrest. In doing so, the state elicited testimony from each witness as to his or her knowledge of the information acquired from the confidential informant. The appellant objected vehemently during *Page 1038 
the testimony of each witness, arguing that any discussion of the information was hearsay. However, each objection was promptly overruled.
Hearsay "consists of an out-of-court statement offered to prove the truth of the matter asserted." Brannon v. State,549 So.2d 532 (Ala.Cr.App. 1989); C. Gamble, McElroy's AlabamaEvidence, § 242.01(1) (4th ed. 1991).
"A statement may be admissible where it is not offered to prove the truth of whatever facts might be stated, 'but rather to establish the reason for action or conduct by the witness.' " Edwards v. State, 502 So.2d 846, 849 (Ala.Cr.App. 1986) (quoting Tucker v. State, 474 So.2d 131, 132 (Ala.Cr.App. 1984), rev'd on other grounds, 474 So.2d 134 (1985)). The officers related information obtained from other sources to explain why they proceeded as they did. This was not hearsay. See, e.g., Brannon, 549 So.2d at 539; McCray v. State,548 So.2d 573, 576 (Ala.Cr.App. 1988). See, also, Molina v. State,533 So.2d 701, 714 (Ala.Cr.App. 1988), cert. denied,489 U.S. 1086, 109 S.Ct. 1547, 103 L.Ed.2d 851 (1989); Tillis v. State,469 So.2d 1367, 1370 (Ala.Cr.App. 1985).
Further, the appellant's Sixth Amendment right to be confronted with the witnesses against him was not violated because the state "is privileged to withhold from an accused disclosure of the identity of an informer." Gamble, supra, § 408.01. See, also, Pugh v. State, 493 So.2d 388 (Ala.Cr.App. 1985), aff'd, 493 So.2d 393 (Ala. 1986). Because there is no evidence that the informant was an active participant in the crime or any evidence indicating that his identity is essential or relevant to the defense, the state has no obligation to disclose the informant's identity. Robinson v. State,565 So.2d 1161 (Ala.Cr.App. 1990); Malone v. State, 452 So.2d 1386
(Ala.Cr.App. 1984).
 II
The appellant next argues that the trial court erred in not granting his motion for a mistrial or, in the alternative, for a continuance to afford him an opportunity to inspect and test samples of marijuana.
Under Rule 18.1(c), A.R.Crim. P.Temp., "the court shall order the district attorney to permit the defendant to analyze . . . controlled substances . . . which are within the possession, custody, or control of the state," but only if such substances (1) are material to the preparation of the defendant's case, (2) are going to be used by the state as evidence at trial, and (3) were obtained from or belong to the defendant. A court's refusal of a defendant's right to analyze controlled substances in the custody of the state is a denial of due process.Jackson v. State, 560 So.2d 1100 (Ala.Cr.App. 1989); Moton v.State, 524 So.2d 381 (Ala.Cr.App. 1988); Ware v. State,472 So.2d 447 (Ala.Cr.App. 1985). However, the trial court is only required to order the state to allow such analysis "upon [the timely] motion of the defendant." Moton, 524 So.2d at 382-83.
Here, the appellant made no motion to analyze the alleged marijuana before or up to the time of trial. When the court required the state to conduct another series of tests on the evidence during the trial, the appellant still made no motion to examine and independently test until the day after the tests were performed. The trial court did not err when it denied the appellant's motion to inspect the evidence because the motion was not timely made. Cowart v. State, 488 So.2d 497, 503
(Ala.Cr.App. 1985), overruled on other grounds by McClendon v.State, 513 So.2d 102 (Ala.Cr.App. 1986); Powers v. State,49 Ala. App. 690, 275 So.2d 369 (1973) (motion to produce presented on the date of trial denied because it was not timely made). Cf. Gayle v. State, 591 So.2d 153 (Ala.Cr.App. 1991) (court's denial of motion made over two months before trial resulted in prejudice to appellant); Jackson, 560 So.2d at 1101 (court's denial of motion made two weeks before trial was reversible error); Moton, 524 So.2d at 383 (motion made one month before trial was timely presented). *Page 1039 
 III
The appellant next argues that the trial court erred in allowing state's exhibits 23 through 30 to be received into evidence because, he says, there was no testimony concerning the chain of custody of those items from the time the evidence was marked for identification on April 10, 1991, until the time the evidence was picked up in court for further laboratory analysis on April 11.
On April 10, the state at trial marked for identification exhibits 23 through 27, which were 5 boxes of material alleged to be marijuana that were found in the garage of the Ingram residence, and exhibits 28 through 30, 3 bags of the same plant material that were taken from the trunk of the appellant's car. The appellant does not dispute that an adequate and detailed chain of custody was established from the time the boxes and bags were confiscated up to the time they were marked for identification in court on April 10, nor does he question the whereabouts of the evidence during the period from the court's recess on April 11, when the exhibits were sent for further laboratory analysis, until court was resumed on April 12, when the exhibits were ultimately identified as containing marijuana and were received into evidence. The only link in the chain of custody that is questioned is the time period from the marking of the exhibits on April 10 until those exhibits were picked up from the court on April 11 to be taken to the Alabama Department of Forensic Sciences for further analysis. In order for evidence to be admissible, there must be a "reasonable probability" that the evidence is not "substantially different" at the end of the chain from what it was at the beginning of the chain. Bridges v. State, 516 So.2d 895, 983 (Ala.Cr.App. 1987). "In absence of a suggestion of tampering, the State need not negate the most remote possibilities of alteration, substitution or interference with the evidence." Williams v.State, 506 So.2d 368 (Ala.Cr.App. 1986), writ denied,506 So.2d 372 (Ala. 1987). In this case the state established a "reasonable probability" that the evidence was not "substantially different" at the end of the chain of custody than it was when first seized. See Bridges, supra.
The circuit court did not err in receiving exhibits 23 through 30 into evidence.
 IV
The appellant's final argument is that the court erred in receiving into evidence the marijuana that was seized from the trunk of the appellant's vehicle because, he says, the evidence was obtained as the result of an illegal search and seizure.
Investigator Darrell Collins's pulling the appellant over after Deputy Chief Wayne Parker blocked the road constituted a seizure within the scope of the Fourth Amendment, which must be supported by probable cause. Minnifield v. State,390 So.2d 1146 (Ala.Cr.App.), writ denied, 390 So.2d 1154 (Ala. 1980). Probable cause requires "a fair probability that contraband or evidence of a crime will be found." Illinois v. Gates,462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). The detailed corroboration of the informant's tip gave the officers probable cause to believe that contraband was in the appellant's car. The "totality of the circumstances" test was passed.
The appellant cites Sawyer v. State, 456 So.2d 114
(Ala.Cr.App. 1984), overruled on other grounds by, Ex parteHergott, 588 So.2d 911 (Ala. 1991), and argues that probable cause to stop an individual does not exist simply because that individual is associated with a known drug dealer. Similar to the tip in Sawyer, the informant's tip here was silent as to the appellant; however, in this case there was more. The appellant was seen driving an automobile into the garage of a suspected narcotics distribution center. Officers had earlier witnessed an apparent drug delivery by trailer to that very garage. The appellant remained in that garage for a few minutes before leaving. This conduct gave the officers probable cause to believe that the appellant was carrying drugs.
The search of the appellant's car that followed the stop was justified by the *Page 1040 
automobile exception to the warrant requirement. "It is well settled that a warrantless search of an automobile may be conducted where probable cause and exigent circumstances
co-exist." Key v. State, 566 So.2d 251, 253-54 (Ala.Cr.App. 1990); Minnifield, 390 So.2d at 1152-53 (emphasis added). However, a showing of exigent circumstances is no longer required to search an automobile lawfully in police custody as long as that search is based on probable cause to believe that it contains contraband. United States v. Johns, 469 U.S. 478,484, 105 S.Ct. 881, 885, 83 L.Ed.2d 890 (1985); Key, 566 So.2d at 254. The corroboration of the informant's tip and the veracity of previous information supplied by the informant, standing alone, supplied the probable cause required by the precepts of the automobile exception.
The narcotic-sniffing dog's "alerting" at the trunk of the appellant's automobile was additional cause to believe that contraband was contained therein. Dalton v. State,575 So.2d 599, 601 n. 1 (Ala.Cr.App. 1989), rev'd on other grounds,575 So.2d 603 (1990); United States v. Race, 529 F.2d 12 (1st Cir. 1976). LaFave, Searches Seizures: A Treatise on the FourthAmendment § 2.2(f) (2d ed. 1987).
The trial court did not err in denying the appellant's motion to suppress evidence of the marijuana found in the trunk of the appellant's car.
For the foregoing reasons, the appellant's conviction is due to be affirmed.
AFFIRMED.
All the Judges concur.