The appellant, Manuel Jesus Ynosencio, appeals his conviction for trafficking in cannabis, § 13A-12-213(a)(1), Code of Alabama 1975. Ynosencio was sentenced to a term of 10 years' imprisonment, plus an additional 5 years' pursuant to §13A-12-231(13), Code of Alabama 1975, because there was a handgun in his vehicle during the commission of the offense. Ynosencio challenges the constitutionality of his initial stop at an interstate roadblock, the subsequent warrantless search of a locked toolbox in his truck, and the trial court's enhancement of his sentence under § 13A-12-231(13).
Evidence produced during the hearing on Ynosencio's motion to suppress the evidence seized as a result of the stop tended to show the following facts. During the early morning hours of September 10, 1991, members of the Tuscaloosa County Sheriff's Department, the Alabama State Troopers, the Alabama Department of Revenue, and the Federal Department of Transportation set up a roadblock on the northbound lane of interstate 59. The purpose of the roadblock was to check every vehicle in the northbound lane for drivers licenses and proper safety equipment, and to look for evidence that the driver was driving under the influence of alcohol or that the driver possessed narcotics. In addition, agents with the Department of Revenue checked each tractor-trailer rig for violations of the revenue code.
A lighted signboard posted by the highway department directed all northbound traffic to pass through a rest area located a short distance off the highway. There, passenger vehicles were separated from tractor-trailer rigs for purposes of inspection. Every passenger vehicle was inspected for safety equipment, and the drivers were required to show their drivers licenses and were checked for any evidence of intoxication. Every third vehicle was inspected by certified drug detection dogs for signs of narcotics. Two such dogs were present at the scene. When a vehicle was inspected for narcotics, a K-9 handler with the sheriff's department would walk one of the dogs around the vehicle and allow it to sniff the exterior. If the dog indicated that it detected the presence of drugs, the handler would direct the driver to move the vehicle to a secondary position away from the other vehicles where the procedure would be repeated more thoroughly with the second dog and his handler.
The decision to inspect every third vehicle for narcotics was made at the scene of the roadblock by the two K-9 handlers and the officer who was directing the flow of traffic into the rest area. It was determined that the traffic was too heavy to have the dogs inspect every vehicle. Therefore, the two handlers and the officer directing traffic alternated the responsibility of calling out which vehicles were third. When Ynosencio's truck passed through the inspection area, the officer in charge of directing traffic determined that his truck was third and thus due to be inspected for narcotics. Deputy Mark Weaver, a trained handler of drug detection dogs, conducted the initial inspection on the truck. Weaver walked the dog around Ynosencio's truck and allowed it to sniff the air around the vehicle. The dog tried to leap into the bed of the truck and gave several indications that led Weaver to believe that narcotics were located somewhere in the truck bed. As a result, Weaver had Ynosencio pull his truck over into the secondary area so that the other dog could inspect the truck. When the truck was in *Page 797 
position, Weaver had Ynosencio exit the vehicle and follow him towards his patrol car. As they walked, Weaver read Ynosencio his Miranda rights. He also patted Ynosencio down to see if he had a weapon on his person; which he did not. Weaver did not intend to arrest him at that time. Rather, Weaver planned to obtain a search warrant to search the entire vehicle.
While Weaver was talking with Ynosencio, Deputy Jonathan Dorriety conducted the second inspection on the truck. Dorriety was certified as a K-9 instructor. When he walked his dog along the side of the truck, the dog climbed into the truck bed and immediately indicated to Dorriety that he detected narcotics in a black toolbox located at the back of the truck bed. At that time, Dorriety restrained his dog and placed him in his vehicle. He then returned to the truck, took the keys out of the ignition, and used one of the keys to unlock the toolbox. The toolbox had two compartments. Inside the compartments, Dorriety discovered large quantities of marijuana (cannabis) and a tote bag which contained a semi-automatic pistol. Following Dorriety's discovery, Ynosencio was placed under arrest.
 I
Ynosencio's first contention is that his initial stop at the roadblock was violative of the Fourth Amendment and the criteria for roadblocks adopted by this court in Cains v.State, 555 So.2d 290 (Ala.Cr.App. 1989).
In Cains, we held that "roadblocks operated pursuant to an objective and neutral plan of briefly halting all oncoming traffic are only minimally intrusive to the individual motorist and are thus constitutionally reasonable seizures." 555 So.2d at 296. Although the roadblock in this case stopped all northbound traffic on interstate 59, Ynosencio nonetheless argues that the roadblock was not operated "pursuant to an objective and neutral plan" primarily because, he argues, the K-9 handlers made the decision to inspect every third vehicle for narcotics while the roadblock was in progress and because the responsibility for determining which vehicles were third was shared loosely by several people. Despite these facts, we find that the roadblock was constitutionally sound.
Our holding in Cains relied in part upon a broad evaluation of cases that involved roadblock stops. We found that in most cases "condemned stops were invalidated because they involved the 'standardless and unconstrained discretion' of officers in the field." Cains v. State, 555 So.2d at 296, citing Delawarev. Prouse, 440 U.S. 648, 661, 99 S.Ct. 1391, 1400,59 L.Ed.2d 660 (1979). Here, there is no evidence that any of the participants in this roadblock attempted a random inspection of the vehicles. Indeed, the K-9 handler's decision to inspect every third vehicle showed a desire on their part to maintain objective standards. The fact that several officers shared the duty of determining which vehicles were third may have well caused some vehicles to be inspected out of order. However, the procedure did not render the roadblock and all of its stops constitutionally infirm. Thus, the trial court did not err when it held that the initial stop of Ynosencio was proper.
 II
Next, Ynosencio contends that the warrantless search by Deputy Dorriety of the locked toolbox was not supported by probable cause. Specifically, he argues that the "indications" of the two drug detection dogs were insufficient to establish probable cause because, he says, the dogs had wrongly indicated that drugs were present inside a vehicle earlier in the evening. Nevertheless, we find that the search was justified under the automobile exception to the warrant requirement.
 "The Fourth Amendment does not require the police to obtain a warrant to search an automobile when they have probable cause to believe it contains contraband or evidence of criminal activity. Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). This exception to the warrant requirement rule is based on the inherently mobile nature of an automobile and the decreased expectation of privacy that an individual has in an automobile. California *Page 798 v. Carney, 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985). This exception applies even if the automobile is parked and stationary when the officers find it. Cady v. Dombrowski, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973)."
Griffin v. State, 579 So.2d 35, 37 (Ala.Cr.App. 1991).
An "indication" by a trained drug detection dog has been held to constitute probable cause to search. Dalton v. State,575 So.2d 599, 601, n. 1 (Ala.Cr.App. 1989), rev'd on other grounds, 575 So.2d 603 (1990); United States v. Race,529 F.2d 12 (1st Cir. 1976). LaFave, Searches Seizures: A Treatise onthe Fourth Amendment § 2.2(f) (2d ed. 1987). Here, two drug detection dogs indicated that they detected narcotics in the same location on Ynosencio's truck. The fact that one mis-indication was made earlier in the evening does not by itself destroy the general reliability of a trained dog's indication of narcotics. Under the facts of this case, the indications of two separate dogs provided probable cause to search the vehicle. Therefore, the trial court properly denied Ynosencio's motion to suppress the evidence taken from the toolbox.
 III
Finally, Ynosencio contends that the trial court erred when it enhanced his sentence by five years pursuant to §13A-12-231(13), Code of Alabama 1975. Specifically, he argues that the enhancing statute does not apply to him because, he says, he did not have the "present ability" to use the firearm found in the tote bag located in the toolbox. In other words, he contends that the statute applies only when the narcotics trafficker is shown to have been in actual possession of the firearm.
§ 13A-12-231(13), provides:
 "Notwithstanding any provision of law to the contrary, any person who has possession of a firearm during the commission of any act proscribed by this section shall be punished by a term of imprisonment of five calendar years which shall be in addition to, and not in lieu of, the punishment otherwise provided, and a fine of $25,000.00; the court shall not suspend the five-year additional sentence of such person or give such person a probationary sentence."
We have not been directed to a single case that has dealt with the meaning of the word "possession" as it is used in § 13A-12-231(13). It is clear, however, throughout §13A-12-231, that the legislature has generally sought to curb the "actual or constructive possession" of narcotics. We find that the word "possession" as used in § 13A-12-231(13) includes both actual or constructive possession of a firearm in its definition.
We believe that the legislature's primary purpose in enacting the firearm statute was to alleviate the inherent danger that arises whenever narcotics and firearms are brought together. Obviously, firearms are dangerous when they are in the actual possession of a narcotics trafficker. Yet, they are just as dangerous when they are in the trafficker's constructive possession. The fact that a firearm is temporarily being stored in a trafficker's glove compartment, desk drawer, or, in this case, locked toolbox, makes the firearm no less dangerous. The firearm is still capable of being used by the trafficker. Thus, we believe that the legislature intended for the word "possession" as found in the firearms enhancement statute to mean both actual or constructive possession.
In the instant case, it appears clear that Ynosencio was in constructive possession of the firearm found in his locked toolbox. The toolbox was attached to his truck and could only be opened with one of the keys on his key chain. SeeMeadows v. State, 584 So.2d 953 (Ala.Cr.App. 1991). Therefore, the trial court properly enhanced Ynosencio's sentence.
Accordingly, the judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur. *Page 799