BASCHAB, Judge.
The appellant, Morgan Delano Davis, was convicted for trafficking in marijuana, a violation of § 13A-12-231, Code of Alabama 1975, as charged in the indictment. The trial court sentenced the appellant to serve 20 years in prison, plus an additional five years because he used a firearm in the commission of the trafficking offense. See § 13A-12-231(13), Code of Alabama 1975. He raises three issues on appeal.
I.
First, the appellant argues that the trial court erred in denying his motion to suppress both statements and his consent to search his house given following his arrest. Specifically, the appellant argues that he did not make the inculpatory statements voluntarily, nor did he voluntarily consent to the search. Rather, he contends that the statements and consent were obtained as a result of the arresting officers’ allegedly coercive attempts to obtain information that might lead to further arrests. This argument is without merit.
*194 The following evidence was presented during a preliminary hearing on the appellant’s “Motion to Suppress A Statement and Consent to Search”:
Through a joint effort by law enforcement officers from Houston County, Alabama, and Jackson County, Florida, the appellant was arrested at 11:20 a.m. on March 1, 1996, in Graceville, Florida, for possessing approximately 15 pounds of marijuana in his automobile. The appellant was read his Miranda rights and was then taken to the Jackson County Sheriffs Office, where officers began questioning him at 2:20 p.m. that same day. Several officers from both Houston County, Alabama, and Jackson County, Florida, were present throughout the entire interrogation.
Joe Watson, an investigator with the Houston County Sheriffs Department, testified that at the beginning of the interrogation, the officers explained to the appellant that they were interested in apprehending the individuals from whom he had purchased the marijuana. Without being prompted by the officers, the appellant acknowledged to the officers present that “he was in trouble.” A discussion then ensued regarding the possibility of the appellant's providing information that would lead to future arrests of others. Before the appellant revealed any such information, Investigator Watson recited to the appellant his Miranda rights.
After expressly acknowledging that he understood his Miranda rights, the appellant waived those rights and said he wanted to talk to the police officers. The appellant appeared to be lucid, sober, and in control of his faculties when his rights were read to him. According to Investigator Watson, during his interrogation of the appellant, no other officer promised the appellant anything, used any coercion, or threatened him in any manner in order to persuade the appellant to waive his rights. Investigator Watson specifically testified that it is his standard policy “to tell people that, you know, I can’t promise you anything.... [Ajnything that could be done would be dependent on what you can do.... I know I didn’t make him any promises.”
Lieutenant Wester of the Jackson County Sheriffs Department testified, “[Wje always pose the question to [arrestees], especially if they are willing to cooperate, what do you know that will assist law enforcement. If you know it, tell us. Now is the time.” Lieutenant Wester suggested to the appellant that “he needfed] to cooperate and help hisself [sic],” but testified that he did not offer the appellant any inducements. Lieutenant Wester further testified that he made no promises to the appellant that something could be done for him in return for any information he gave that might have aided the police in the future. Sergeant Andy Hughes of the Dothan Police Department testified, “We might have told him now is the time, if you can get anything that can help yourself out, you need to be doing it now. And we couldn’t make him any promises about any help that we could give him, but anything he did would be considered.”
After waiving his rights, the appellant confessed to the crime and told the police officers from whom and the manner in which he had bought the drugs in Texas. In addition, the appellant told the police officers that he had more marijuana in his house in Dothan, Alabama. The appellant then signed a form consenting to a search of his house. During the search, law enforcement authorities discovered three-quarters of a pound of marijuana, a set of scales commonly used to weigh drugs, packaging materials commonly used in the distribution of drugs, and receipts and other documents belonging to the appellant indicating that he had recently made a trip to Texas. Finally, in an unsuccessful effort to aid the officers in apprehending other drug buyers, the appellant placed two telephone calls to two individuals to schedule a drug buy.
The appellant testified that the law enforcement officers induced him with implied promises of leniency and favorable treatment if he provided information that would assist them. He contended that he made the inculpatory statements and consented to the search of his house only because the officers allegedly implied that if he helped them, they would return the favor by talking to the district attorney on his behalf. In addition, the appellant alleged that law enforcement officials never read him his Mi *195 randa rights. The trial court denied the appellant’s motion to suppress both the incul-patory statements made to the police officers and his consent to search his home.
“ ‘All extra-judicial statements are deemed involuntary.’ Smith v. State, 623 So.2d 369, 372 (Ala.Cr.App.1992). See also Mitchell v. State, 508 So.2d 1196 (Ala.Cr.App.1986). Before an accused’s inculpato-ry statement can be received into evidence, the state has to show that the statement was voluntary, that the accused was read his Miranda rights, that he understood [those] rights, and that he waived those rights. Whitlow v. State, 509 So.2d 252 (Ala.Cr.App.1987); Malone v. State, 452 So.2d 1386 (Ala.Cr.App.1984).”
McCray v. State, 629 So.2d 729, 731 (Ala.Cr.App.1993).
The determination of whether the appellant was read his Miranda rights presented an issue of credibility for the trial court to resolve.
“ ‘ “Absent clear error, the [circuit] court’s credibility choices at suppression hearings are binding on this court.” Walker v. State, 551 So.2d 449, 451 (Ala.Cr.App.1989). The standard of review of conflicting evidence at a motion to suppress a confession is whether the trial court’s finding was “manifestly contrary to the great weight of the evidence.” Ex parte Mathews[Matthews], 601 So.2d 52 (Ala.1992), cert. denied, 505 U.S. 1206, 112 S.Ct. 2996, 120 L.Ed.2d 872 (1992). See also Ex parte Singleton, 465 So.2d 443, 445 (Ala.1985) (whether the finding was “palpably contrary to the weight of the evidence.”).’”
D.M.M. v. State, 647 So.2d 57, 61 (Ala.Cr.App.1994), quoting Thompson v. State, 611 So.2d 476, 478 (Ala.Cr.App.1992). Here, the trial court determined that the appellant was read his Miranda rights and that he waived those rights before making the inculpatory statements to the police officers. After reviewing the facts above, we find that this determination was not manifestly contrary to the great weight of the evidence. Thus, the only remaining issue is whether the appellant made the statement voluntarily.
“The Supreme Court of Alabama has stated:
The true test of voluntariness of extra-judicial confessions is whether, under all the surrounding circumstances, they have been induced by a threat or a promise, express or implied, operating to produce in the mind of the prisoner apprehension of harm or hope of favor; and if so, whether true or false, such confessions must be excluded from the consideration of the jury as having been procured by undue influence.’
“Guenther v. State, 282 Ala. 620, 623, 213 So.2d 679, 681 (1968), cert. denied, 393 U.S. 1107, 89 S.Ct. 916, 21 L.Ed.2d 803 (1969). See also Ex parte McCary, 528 So.2d 1133 (Ala.1988). ‘Any implied promises, however tenuous, render a statement to police involuntary and the product of coercion.’ Franklin v. State, 621 So.2d 364 (Ala.Cr.App.1992); Wyatt v. State, 620 So.2d 77 (Ala.Cr.App.1992). See C. Gamble, McElroy’s Alabama Evidence § 200.01(1) (4th ed.1991).”
McCray, 629 So.2d at 731-32.
“Whether an appellant’s confession is voluntary is a determination left to the discretion of the circuit judge and that determination will not be disturbed on appeal unless contrary to the great weight of the evidence and manifestly wrong. We must look at the totality of the circumstances surrounding the confession to determine whether it was voluntary.”
Williams v. State, 627 So.2d 994, 997 (Ala.Cr.App.1992), aff'd, 627 So.2d 999 (Ala.1993), cert. denied, 511 U.S. 1012, 114 S.Ct. 1387, 128 L.Ed.2d 61 (1994). Inculpatory statements or admissions, such as the one in this case, are governed by the same law that governs confessions. See Franklin v. State, 621 So.2d 364, 366 (Ala.Cr.App.1992).
Based on the totality of the circumstances in the case, we hold that the appellant’s inculpatory statements and his consent to search his home were made voluntarily. First, no express promises were made by any law enforcement officer to the appellant offering favorable treatment in exchange for information that would lead to future arrests. Second, the statements that were made by the law enforcement officials to the appellant *196 do not rise to the level of implied inducements or coercion prohibited by Alabama law. Indeed, this court has upheld a conviction where a statement, very similar to those made to the appellant, was made to a defendant following his arrest:
“Contrary to Williams’ [the defendant’s] argument, the statement by Detective Gibbs [the interrogating officer] that only Williams could help himself by telling the truth did not amount to an implied promise of leniency which would render Williams’ confession involuntary. Taken in its proper context, the statement by Gibbs was clearly an exhortation to Williams to tell the truth and did not imply a promise or inducement for the confession.”
Williams v. State, 600 So.2d 432, 434 (Ala.Cr.App.1992) (emphasis added). The statements made by the officers in this case fall within the same category as the statements we reviewed in Williams. Finally, the majority of the testimony at the suppression hearing, from both the law enforcement officials and the appellant, presented an issue of credibility for the trial court to resolve. “ ‘[A] trial court’s ruling based upon conflicting evidence given at a suppression hearing is binding on this Court, and is not to be reversed absent a clear abuse of discretion.’ ” Rutledge v. State, 651 So.2d 1141, 1144-45 (Ala.Cr.App.1994), quoting Jackson v. State, 589 So.2d 781, 784 (Ala.Cr.App.1991). After thoroughly reviewing the record, we conclude that the trial court did not abuse its discretion in its assessment of the credibility of the witnesses testifying at the suppression hearing.
Therefore, the trial court did not abuse its discretion in denying the appellant’s motion to suppress both the inculpatory statements and the consent to search his home.
II.
The appellant also argues that the State failed to present evidence sufficient to establish a prima facie case of trafficking in marijuana. Specifically, he argues that the State failed to prove that he possessed the marijuana while he was in Alabama. He therefore argues that the trial court erred by denying his motion for a judgment of acquittal made at the close of the State’s case-in-chief. This argument is without merit as well.
Section 13A-12-231, Code of Alabama 1975, provides:
“(1) Any person who knowingly sells, manufactures, delivers, or brings into this state, or who is knowingly in actual or constructive possession of, in excess of one kilo or 2.2 pounds of any part of the plant of the genus Cannabis, whether growing or not, the seeds thereof, the resin extracted from any part of the plant, and every compound, manufacture, salt, derivative, mixture, or preparation of the plant, its seeds, or resin including the completely defoliated mature stalks of the plant, fiber produced from the stalks, oil, or cake, or the completely sterilized samples of seeds of the plant which are incapable of germination is guilty of a felony, which felony shall be known as ‘trafficking in cannabis.’ Nothing in this subdivision shall apply to samples of tetrahydrocannabinols including, but not limited to, all synthetic or naturally produced samples of tetrahydro-cannabinols and which do not contain plant material exhibiting the external morphological features of the plant cannabis.”
We have previously held:
“When considering any issue dealing with sufficiency, ‘this court is required to view the evidence in a light most favorable to the prosecution.’ Parrish v. State, 494 So.2d 705, 709 (Ala.Cr.App.1985). Any conflict in the evidence presents a question for the finder of fact.”
A.B.T. v. State, 620 So.2d 120, 121-22 (Ala.Cr.App.1992).
Viewed in a light most favorable to the State, the evidence introduced at trial showed the following:
On the morning of March 1, 1996, a confidential informant met with the appellant at a Dothan restaurant. The appellant agreed to deliver 15 pounds of marijuana to the informant at noon that day in Graceville, Florida, three miles from the Alabama border. After the appellant’s house was placed under surveillance and shortly after the meeting, the appellant arrived at his house and then quickly left. To avoid detection, various law *197 enforcement officers in different vehicles took turns following the appellant. Testimony from these officers at trial indicated that the appellant was under constant surveillance from the time he left his neighborhood in Dothan, Alabama, until he arrived at a police roadblock set up just outside ¶ Graeeville, Florida. In addition, the appellant did not make any stops during the entire trip other than those necessary to obey traffic laws.
Upon approaching the roadbloek, the appellant abruptly stopped his car and turned into a driveway, where he was approached by the law enforcement officers following him. The appellant was sweating profusely. When an officer asked him why he was so nervous, the appellant replied that he was a nervous person. The officers placed the appellant under arrest and read him his Miranda rights. The appellant consented to a search of his car, and the police officers discovered approximately 15 pounds of marijuana. After obtaining the appellant’s consent to search his house, the police officers discovered an additional three-quarters of a pound of marijuana. Finally, the evidence seized during the search of the appellant’s home and the inculpatory statements discussed in Part I of this opinion were admitted into evidence as well.
The State presented sufficient evidence to establish a prima facie case of trafficking in marijuana. There was ample evidence to suggest that the appellant possessed the marijuana while he was in the State of Alabama. Therefore, the trial court properly denied the appellant’s motion for a judgment of acquittal.
III.
Finally, the appellant argues that the trial court erred by sentencing him to an additional five years in prison pursuant to the firearms enhancement provision of Alabama’s drug trafficking statute, § 13A-12-231(13), Code of Alabama 1975. He offers two grounds in support of this argument.
A.
First, the appellant argues that this enhanced sentencing was inappropriate because the State failed to introduce into evidence the firearm found during the search of his house following his arrest. This argument must fail in light of our decision in Sorrells v. State, 667 So.2d 142 (Ala.Cr.App.1994), in which we held that a defendant could be sentenced under the Firearm Enhancement Act, § 13A-5-6, Code of Alabama 1975, even absent a jury finding that the appellant had possession of a firearm during commission of the crime. In Sorrells, we noted:
“[I]n Ex parte Guess, 507 So.2d 551 (Ala.1987), the Alabama Supreme Court found that the trial court had not erred in sentencing the [defendant] under the Firearm Enhancement Act [§ 13A-5-6] in the absence of a jury finding, as there was evidence that the appellant had put a pistol to the victim’s head and then had knocked him unconscious with a blunt object. In the present case, there was evidence that the appellant had fired a shotgun at the victim, a law enforcement officer. Therefore, the trial court did not err in sentencing the appellant to 10 years’ imprisonment under [§ 13A-5-6].”
667 So.2d at 144.
Consistent with our decision in Sorrells, a trial court may apply § 13A-12-231(13) absent a specific jury finding that the defendant possessed a firearm during the commission of the crime. The firearm need not be introduced into evidence at trial in order to justify application of § 13A-12-231(13). However, there must be sufficient evidence from which the trial court could reasonably conclude that the appellant had possession a firearm during the commission of a crime defined in § 13A-12-231. As we instruct in Part III. B. of this opinion, the trial court on remand must make written findings of fact detailing the evidence from which it concluded that the appellant possessed the pistol while trafficking in marijuana.
B.
Second, the appellant argues that the additional five-year sentence under § 13A-12-231(13) was inappropriate because the pistol was located in his house in Dothan, Alabama, when he was arrested in Graeeville, Florida. *198 The appellant relies solely on our decision in Ynosencio v. State, 629 So.2d 795 (Ala.Cr.App.1993), in suggesting that there must be an “inherent danger” that a firearm will be used at the time a defendant is arrested for drug trafficking. The appellant misconstrues Ynosencio.
The defendant in Ynosencio was arrested for trafficking in marijuana after police officers discovered drugs hidden in a locked toolbox in the bed of the defendant’s truck. The police officers also discovered a pistol in a totebag in the toolbox. The defendant argued that § 13A-12-231(13) did not apply because he did not have the “present ability” to use the firearm at the time of his arrest. Section 13A-12-231(13), Code of Alabama 1975, provides:
“Notwithstanding any provision of law to the contrary, any person who has possession of a firearm during the commission of any act proscribed by this section shall be punished by a term of imprisonment of five calendar years which shall be in addition to, and not in lieu of, the punishment otherwise provided, and a fine of $25,000; the court shall not suspend the five-year additional sentence of the person or give the person a probationary sentence.”
(emphasis added.) This statute does not require that a defendant use a firearm while committing a crime defined in § 13A-12-231. Rather, § 13A-12-231(13) applies if a defendant possesses a firearm during commission of the crime. In holding that the legislature intended for the term “possession” as it is used in § 13A-12-231(13) to include both actual or constructive possession of a firearm, we stated:
“We believe that the legislature’s primary purpose in enacting the firearm statute was to alleviate the inherent danger that arises whenever narcotics and firearms are brought together. Obviously, firearms are dangerous when they are in the actual possession of a narcotics trafficker. Yet, they are just as dangerous when they are in the trafficker’s constructive possession. The fact that a firearm is temporarily being stored in a trafficker’s glove compartment, desk drawer, or, in this case, locked toolbox, makes the firearm no less dangerous. The firearm is still capable of being used by the trafficker. Thus, we believe that the legislature intended for the word ‘possession’ as found in the firearms enhancement statute to mean both actual or constructive possession.”
Ynosencio, 629 So.2d at 798 (emphasis added). See also Browder v. State, 728 So.2d 1108 (Ala.1997) (holding that § 13A-12-231(13) “was meant to encompass both actual and constructive possession of a firearm”).
In light of this rationale, the appellant’s argument that, to justify the enhanced sentence, there must be an “inherent danger” that a firearm will be used at the time of arrest must fail. As we stated in Ynosen-cio, the legislature’s intent in enacting this provision was to prevent the danger created whenever firearms and narcotics are brought together. To hold that § 13A-12-231(13) applies only when there is an “inherent danger” that the drug trafficker could use the firearm at the time of arrest would frustrate this intent. We emphasized in Ynosencio that an inherent danger exists whenever a trafficker possesses drugs and has the capability of using a firearm. We make it clear today that § 13A-12-231(13) will apply whenever a defendant actually or constructively possesses a firearm at any point during the commission of a drug trafficking violation.
Relying upon our reasoning in Ynosencio, the trial court apparently found that the appellant had constructive possession of the pistol and applied § 13A-12-231(13) when sentencing the appellant. However, the trial court did not state the specific grounds upon which it relied in reaching this conclusion. Therefore, we remand this case to the trial court for that court to conduct a hearing on the issue whether the appellant “possessed” the firearm while committing the crime of trafficking in marijuana. See Browder, supra. In determining whether the appellant *199 had constructive possession of the firearm, the trial court shall take into consideration the factors we discussed in Temple v. State, 366 So.2d 740 (Ala.Cr.App.1978). The trial court shall take all necessary action to see that the circuit clerk makes due return of the transcript and written findings of fact at the earliest possible time and within 42 days of the release of this opinion.
REMANDED WITH DIRECTIONS.*
All judges concur.

 Note from the reporter of decisions: On March 6, 1988, on return to remand, the Court of Criminal Appeals affirmed, without opinion. On May 8, 1998, that court denied rehearing, without opinion. On December 18, 1998, the Supreme Court denied certiorari review without opinion (1971484).