Joseph Paul Mitchell was charged in a three-count indictment with capital murder in connection with the death of Mary C. Stone. On the day scheduled for the appellant's trial, the State and the appellant entered into an agreement whereby the indictment would be amended to include an additional count charging felony murder, and the three capital murder charges would be nol prossed. In return, the appellant agreed to waive his right to a jury trial. The court consented to this agreement and proceeded to hear the evidence as presented in this case.
The trial court found the appellant guilty of felony murder and sentenced him to life imprisonment without parole as a habitual felony offender.
The facts of this case will be briefly stated. During the early morning hours of May 12, 1985, Hollis Hunsinger, a neighbor of the victim, heard voices coming from the victim's apartment. Hunsinger heard the victim say "no, darling" several times, and she detected distress in the victim's voice. Later that morning, the victim's body was found lying on her bed in her apartment.
Dr. Joseph Embry performed an autopsy on the victim's body. Embry testified that he found numerous bruises and incised wounds to the victim's body. However, he stated that none of these injuries themselves caused the victim's death.
Embry's internal examination of the victim's body revealed the presence of an enlarged heart and arteriosclerosis. Embry determined the cause of death to be acute coronary artery insufficiency or, in other words, a heart attack. He stated that, in light of the degree of coronary artery disease present in the victim's body, the emotional injury suffered by the victim as a result of her beating led to a heart attack.
The appellant's statement to the police was admitted into evidence. The appellant stated that he saw the victim counting money in her apartment as he was walking through the apartment complex on the morning in question. He entered the apartment through a rear window and found the victim sitting on her bed. The appellant hit the victim with his fist and stuck her with his fingernail file. The appellant had sexual intercourse with the victim and then looked in the refrigerator for some meat to sell. When the appellant left the apartment, the victim was sitting on her bed.
Defense counsel presented the testimony of Dr. Josefino Aguilar. Dr. Aguilar disagreed with Embry's determination as to the cause of the victim's death.
 I
Prior to trial, a hearing was held on the appellant's motion to suppress his statement. At the hearing, evidence was presented that the appellant was arrested on June 29, 1985 on charges unrelated to the case at bar. At approximately 4:00 p.m., Howard Turner of the Huntsville Police Department, advised this appellant of his Miranda rights, and told him he wanted to talk to him about the case at bar.
 "A After advising Mr. Mitchell of his rights, at this time I told Paul or Mr. Mitchell that I wanted to talk to him about this particular case that I thought he was involved in. I told Paul that the shoes he was wearing that particular morning when he was picked up, the soles of those shoes were very much like the ones of a plaster cast or a print that was found at the scene on Brookside Street. I told Paul that the woman had died of heart failure and that anything that had been done to this lady didn't *Page 1198 kill her and she wouldn't have died unless her heart quit. I went on to tell Paul that a witness that he knew very well had seen a black guy run from this area, meaning Brookside Street, on this particular morning, May 12th, and that this witness had stated that he could identify this guy again provided that he ever saw him.
 "Q Go ahead and tell us what conversation you had with him and he had with you pursuant to that.
 "A At this time Paul denied knowing anything about what I was talking about by saying 'I didn't do it.' At 1650 hours or 10 minutes to 5, I put Paul in an interview room and told him to think about what I had just said and if he decided he wanted to talk to me, to knock on the door or to open the door and come out, that I would be outside in the office." (Emphasis added.) (R. 65-66)
At approximately 5:20 p.m., Officer Tommy Thompson went into the room with the appellant and said he wanted to talk about this case. The appellant repeatedly denied any knowledge of the victim's death. Thompson told the appellant that there was evidence linking him to the victim's death and attempted to leave. The appellant asked for Thompson's card in case he wanted to talk later but Thompson replied that he would not talk to him later.
The appellant then admitted some knowledge about this case and then asked to talk with Turner. Thompson got Turner and the appellant gave Turner his statement. He repeated the statement twice, after proper warnings, the next day to Turner and Officer Wayne Sharp.
The appellant stated that, when he was first questioned about this case by Turner, he denied any knowledge of the victim's death. Turner then got a newspaper, showed it to the appellant and said, "look right here. The woman died with a heart attack . . . whatever happened to her didn't kill the woman . . . whoever did it can't be charged with murder . . . now, you ought to go on and tell me about it." (R. 106) After thinking for a while, the appellant gave his statement in this case based on the representation by Turner that the victim died of a heart attack and that he couldn't be charged with her murder.
The appellant now contends on appeal that his statement was the result of an improper inducement, and, thus, his motion to suppress should have been granted.
 "A confession is presumed to be involuntary. Before its admission into evidence there must be evidence addressed to the trial judge sufficient to rebut that presumption and a showing that the confession was made without influence of either hope or of fear, unless the attending circumstances affirmatively disclose the voluntariness of the confession. Wallace v. State, 290 Ala. 201, 275 So.2d 634 (1973); Bush v. State, 282 Ala. 134, 209 So.2d 416 (1968). In order to be admissible a confession must be free and voluntary and cannot be the result of any direct or implied promises, however slight. Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964); Shotwell Mfg. Co. v. United States, 371 U.S. 341, 83 S.Ct. 448, 9 L.Ed.2d 357 (1963); Bell v. Alabama, 5 Cir., 367 F.2d 243, cert. denied, 386 U.S. 916, 87 S.Ct. 859, 17 L.Ed.2d 788 (1966); Wallace, supra. The question of whether a confession was obtained by coercion or improper inducement can be determined only by examination of all the attendant circumstances. Boulden v. Holman, 394 U.S. 478, 89 S.Ct. 1138, 22 L.Ed.2d 433 (1969); Wallace, supra. Each case must stand or fall on its own merits for the constitutional inquiry into the issue of voluntariness requires more than a mere 'color — matching of cases'. Beecher v. Alabama, 389 U.S. 35, 88 S.Ct. 189, 191, 19 L.Ed.2d 35 (1967). The true test of determining whether extrajudicial confessions are voluntary is whether the defendant's will was overborne at the time he confessed and therefore not the product of a rational intellect and a free will. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); Elliott v. State, 338 So.2d 483 (Ala.Cr.App. 1976)."
Eakes v. State, 387 So.2d 855, 858-59
(Ala.Cr.App. 1978). (Emphasis added.) *Page 1199 
 "The settled rule of this Court is that all extrajudicial confessions are presumed to be involuntary and, therefore, are prima facie inadmissible with the onus resting on the prosecution to repel the imputation of undue influence unless the attending circumstances affirmatively disclose the voluntariness of the confession. Any inducement of profit or benefit held out; any hope engineered or encouraged that the prisoner's case will be lightened, meliorated, or more favorably dealt with if he will confess; either of these is enough to exclude the confession thereby superinduced. Any words spoken in the hearing of the prisoner which may, in their nature, generate fear or hope render it not only proper but necessary that a confession made within a reasonable time afterwards shall be excluded, unless it is shown by clear and full proof that the confession was voluntarily made after all trace of hope or fear had been fully withdrawn or explained away and the mind of the prisoner made as free from fear, intimidation or hope for reward as if no attempt had ever been made to obtain such a confession. The true test is whether, under all the surrounding circumstances, a confession has been induced by a threat or a promise, express or implied, operating to produce in the mind of the prisoner apprehension of harm or hope of favor. If so, whether true or false, such a confession must be excluded from the consideration of the jury as having been procured by undue influence. The duty rests in the first instance on the trial judge to determine whether or not a confession is voluntary. Womack v. State, 281 Ala. 499, 205 So.2d 579; Harris v. State, 280 Ala. 468, 195 So.2d 521; Bush v. State, 282 Ala. 134, 209 So.2d 416; Beecher v. State, 288 Ala. 1, 256 So.2d 154; Duncan v. State, 278 Ala. 145, 176 So.2d 840; Edwardson v. State, 255 Ala. 246, 51 So.2d 233; Stewart v. State, 231 Ala. 594, 165 So. 840."
Wallace v. State, 290 Ala. 201, 204, 275 So.2d 634
(1973). (Emphasis added).
A trial judge's decision as to the voluntariness of a statement will not be disturbed on appeal unless the decision is contrary to the great weight of the evidence and manifestly wrong. Hurst v. State, 356 So.2d 1224
(Ala.Cr.App. 1978).
Here, we find the trial judge's decision as to the voluntariness of the appellant's statement was palpably wrong and contrary to the weight of the evidence as presented.
Officer Turner, who had known the appellant for a long time, testified at the suppression hearing that he specifically told the appellant "that the woman died of heart failure and that anything that had been done to this lady didn't kill her and she wouldn't have died unless her heart quit." (R. 65)
Unquestionably, Turner's statement was a representation to this appellant that his actions didn't kill the victim, and, thus, he couldn't be prosecuted for murder. His statement constituted an implied promise that the appellant wouldn't or couldn't be charged with murder if he made a statement. Although there was conflicting evidence as to the extent of Turner's representation to the appellant concerning the cause of the victim's death, and the fact that he couldn't be charged with her murder, there is no doubt that such a representation was here made.
The appellant testified that he gave his statement as a result of the misrepresentation made by Turner. The State presented no evidence that this misrepresentation was corrected or modified before the appellant made his three statements.
It is clear to this court that the appellant did, indeed, make his statement believing his conduct did not cause the victim's death, and, therefore, that he could not be charged with her murder, based on the representations made by Turner.
It is our conclusion that his statement was improperly induced by a promise from Turner that he would not be prosecuted for murder if he made a statement setting forth his knowledge of this matter. See generally, C. Gamble,McElroy's Alabama Evidence, § 200.07(6) (3rd ed. 1977). The *Page 1200 
appellant's motion to suppress should have been granted at trial.
For the reasons shown, this case is reversed and remanded to the trial court.
REVERSED AND REMANDED.
All the Judges concur.