The appellant, Donald Dean Franklin, was charged with two counts of unlawful possession of cocaine, a violation of §13A-12-212, Code of Alabama 1975. He was found not guilty on one count, but was convicted and was sentenced to 10 years in prison on the other.
The state's evidence tended to show that on May 10, 1991, Investigator Jim Cook of the Huntsville Police Department received information from a confidential informant that the appellant would be transporting two kilograms of cocaine from Nashville, Tennessee, to his farm in Madison County, Alabama. Investigator Cook and Madison County Sheriff's Deputy Stan Bice placed the farm under surveillance. A while later, the appellant arrived at the farm, accompanied by Ricky Pettus. The appellant later left the farm and after a chase was arrested by Cook and Bice.
After the appellant was arrested, the officers searched the farmhouse and all surrounding property. Inside the house, officers found drug paraphernalia, including electronic scales and a spoon covered with cocaine residue. The scales were covered with cocaine powder. A bag containing cocaine was found buried in the dirt floor of a small pumphouse located adjacent to the farmhouse.
On the day after the search, Cook and Bice visited the appellant in jail. The appellant was advised of his rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602,16 L.Ed.2d 694 (1966), and was questioned about the cocaine and other evidence found at the farm. The appellant did not respond to the questions concerning the charged crime. At that point, the focus of the conversation changed, with Investigator Cook asking the appellant if he would be willing to work for the Huntsville Police Department, setting up reverse buys, whereby the appellant would sell drugs to people, and the police would then arrest the purchasers. Investigator Cook told the appellant that if he would cooperate with the police, Cook "would let it be known to the assistant district attorney in charge of [the appellant's] case, the extent of his cooperation, and that he would relay that to the judge at the time of sentencing for some hope of some consideration." Thereupon, the appellant agreed that he would help the police set up the reverse buys, once he got out of jail. He then represented that he had supplied cocaine to at least three people in the Huntsville area. Following the appellant's release on bond, Cook and Bice met with the appellant on two other occasions. During these meetings, the officers *Page 366 
and the appellant again discussed setting up the reverse buys, but no buys ever occurred. The appellant's statements made during the discussion about setting up the reverse buys were received into evidence, over timely objection.
 I
The appellant first contends that the trial court committed reversible error in denying his motion to suppress his extra-judicial statements. Specifically, he urges that Investigator Cook's promise to tell the assistant district attorney of his cooperation and to relay this information to the sentencing judge coerced him to make certain statements and therefore rendered those statements legally inadmissible. For the following reasons we must agree.
The state correctly asserts that these statements did not amount to a confession to the crime for which the appellant was convicted, but rather were admissions to having possessed and sold cocaine in the past.
The fact that an accused's extra-judicial statement is an admission does not make that statement automatically admissible. Such an admission is governed by the same law as governs confessions. As Judge Bowen stated in Carroll v. State,370 So.2d 749, 753 (Ala.Cr.App.), cert. denied, 370 So.2d 761
(Ala. 1979):
 "It is settled in Alabama that admissions relating directly to the facts or circumstances of the alleged crime and connecting the defendant therewith are inculpatory admissions in the nature of a confession and subject to the same rules as direct confessions. Reeves v. State, 260 Ala. 66, 73, 68 So.2d 14 (1953); Campbell v. State, 341 So.2d 735, 740 (Ala.Cr.App.), affirmed, 341 So.2d 742 (Ala. 1976); Kendrick v. State, 55 Ala. App. 11, 312 So.2d 583 (1975). Admissions as to purely collateral matters, which are not confessory of guilt in any respect, are not within the scope of this rule, and the predicate as for a confession need not be laid. Tillison v. State, 248 Ala. 199, 27 So.2d 43 (1946); Herring v. State, 242 Ala. 85, 5 So.2d 104 (1942); Twymon v. State, 358 So.2d 1072 (Ala.Cr.App. 1978); Campbell v. State, 341 So.2d at 740; C. Gamble, McElroy's Alabama Evidence § 200.02(4)(e) (3rd ed. 1977)."
Here, the appellant's statements concerning his possession and sale of cocaine were admissions related and connected to the crime for which the appellant was convicted. The appellant, during his meetings with the police investigators, admitted to having sold drugs to people in the Huntsville area. His admission to the sale of illegal drugs would by necessity imply to the jury that he also was in possession of illegal drugs, during the times he made the sales. Therefore, before these statements could be received into evidence at trial, they must meet the rules applicable to extra-judicial confessions.
"All extra-judicial statements are deemed involuntary."Smith v. State, 623 So.2d 369 (Ala.Cr.App. 1992). See alsoMitchell v. State, 508 So.2d 1196 (Ala.Cr.App. 1986). Before an accused's confession can be received into evidence, the state has to show that the statement was voluntary, that the accused was read his Miranda rights, and that he waived them. Whitlowv. State, 509 So.2d 252 (Ala.Cr.App. 1987); Malone v. State,452 So.2d 1386 (Ala.Cr.App. 1984). There is no question here that the appellant was read his Miranda rights and waived them before being questioned by the law enforcement officers. Thus, our emphasis turns to whether the statements were voluntary.
The Supreme Court of Alabama has held that:
 "The true test of voluntariness of extra-judicial confessions is whether, under all the surrounding circumstances, they have been induced by a threat or a promise, express or implied, operating to produce in the mind of the prisoner apprehension of harm or hope of favor; and if so, whether true or false, such confessions must be excluded from the consideration of the jury as having been procured by undue influence." *Page 367 
Guenther v. State, 282 Ala. 620, 623, 213 So.2d 679, 681
(1968), cert. denied, 393 U.S. 1107, 89 S.Ct. 916,21 L.Ed.2d 803 (1969). See also Ex parte McCary, 528 So.2d 1133 (Ala. 1988).
Any implied promises, however tenuous, render a statement to police involuntary and the product of coercion. Wyatt v. State,620 So.2d 77 (Ala.Cr.App. 1992). See C. Gamble, McElroy'sAlabama Evidence § 200.01(1) (4th ed. 1991).
Applying the law governing the admissibility of extra-judicial confessions to the instant facts, we find that Investigator Cook's promise to let the appellant's cooperation be known to the assistant district attorney was coercive. Such a promise, made under these circumstances, would necessarily engender a hope of reward in the appellant's mind. Therefore, the statements he made in response should have been suppressed. In terms of public policy, it should be possible for an accused to talk about cooperating with the state in arresting other lawbreakers without having his conversation used against him to prove the crime of which he is accused.
The state further argues that, even if it was error to receive the appellant's statements into evidence because they were involuntary, such an error was harmless, under the standard set forth in Arizona v. Fulminante, 499 U.S. 279,111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). In Fulminante, the United States Supreme Court held that the harmless error doctrine applied to the admission of coerced confessions. The receipt of a coerced confession is harmless if this court can say, based on the circumstances of the case, that its receipt was harmless "beyond a reasonable doubt." Fulminante.
Here, the appellant's admission to the police that he was a drug dealer was devastating, and easily the most incriminating evidence against him. It cannot be said, in our judgment, beyond a reasonable doubt, that the jury in this case would have returned a verdict of guilty had these statements of the appellant been suppressed. We therefore hold that the trial court erred in denying the appellant's motion to suppress his inculpatory statements.
To save time, we will address the appellant's remaining issue, which may re-appear in any subsequent proceedings.
 II
The appellant argues that the trial court erred in denying his motion to suppress the evidence of the cocaine and drug paraphernalia found at the farmhouse. Specifically, he argues that the affidavit in support of the search warrant cites no probable cause and therefore that the warrant was invalid.
Investigator Cook, in his affidavit in support of the search warrant, stated that the appellant and his farmhouse had been under surveillance for approximately six weeks. According to the affidavit, during this time Cook had observed the appellant enter and exit the farmhouse, located in Madison County. Cook testified that he had been told by a confidential informant that the appellant primarily used the farmhouse to store cocaine. Cook stated that he had used this informant in the past and that the informant had always proved to be reliable. According to Cook, the informant told Cook that the appellant would be bringing a shipment of cocaine from Nashville, Tennessee, to the farmhouse, at which time he would "cut" the cocaine and transport a portion of it back to Huntsville. Cook also stated that other investigators in the Huntsville area had told him that the farmhouse was being used to store cocaine. As a result of this information, the appellant's farmhouse was put under surveillance and on May 10, 1991, at 3:45 p.m., a maroon truck, driven by the appellant and carrying a passenger, Ricky Pettus, arrived at the farmhouse. When the appellant and Pettus left the farm, Cook radioed to other officers in the area to stop the appellant's vehicle. After a six-mile chase, the truck was stopped and the appellant and Pettus were placed in custody. A small bottle, bearing Pettus's name, had been thrown from the vehicle during the chase. It contained cocaine and four pills. A check of the utility records of the farm indicated *Page 368 
that the utilities were in the appellant's wife's name.
At the suppression hearing, Investigator Cook testified that he had been watching the appellant's daily activities for approximately six weeks, during which time the appellant would visit both the farmhouse and an address in Huntsville, where he would leave cocaine in an old truck. He further testified that the informant had direct, firsthand knowledge of the activities of the appellant, and that the informant had seen cocaine at the farmhouse on prior occasions. The informant told Cook that the appellant would bury the cocaine somewhere on his farm, but would not let anyone accompany him to his hiding place on the farm. Cook also stated at the suppression hearing that he had used the informant 12 times in the past and that the information he had gotten had always proved to be reliable.
Section 15-5-3, Code of Alabama 1975, requires as follows:
 "A search warrant can only be issued on probable cause, supported by an affidavit naming or describing the person and particularly describing the property and the place to be searched."
"Probable cause is concerned with 'probabilities,' that 'are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, and not legal technicians, act.' " Carter v. State,435 So.2d 137, 139 (Ala.Cr.App. 1982), quoting Brinegar v. UnitedStates, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879
(1949).
In Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317,76 L.Ed.2d 527 (1983), the United States Supreme Court stated:
 "The task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of the reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . concluding' that probable cause existed."
462 U.S. at 238, 103 S.Ct. at 2332. See also Kirk v. State,612 So.2d 1252, 1254 (Ala.Cr.App. 1992). In Gates, the United States Supreme Court established the "totality of the circumstances" test for evaluating whether probable cause could be adduced based on information provided by a confidential informant. In analyzing an informant's tip, the courts not only look at the veracity, the reliability, and the basis of the informant's knowledge, but also recognize "the value of corroboration of details of an informant's tip by independent police work." Gates, 462 U.S. at 241, 103 S.Ct. at 2334;Benoist v. State, 539 So.2d 1110, 1111 (Ala.Cr.App. 1988). "[A] deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." Gates,462 U.S. at 233, 103 S.Ct. at 2329; Bishop v. State, 518 So.2d 829,831 (Ala.Cr.App. 1987).
The affidavit in support of the search warrant revealed that the police had independently corroborated the information given by the confidential informant. The affidavit stated sufficient probable cause to secure the search warrant for the appellant's farm. The trial court did not err in denying the appellant's motion to suppress the evidence seized pursuant to the search warrant.
For the reasons discussed in Part I of this opinion, the judgment is reversed and the cause remanded to the Circuit Court for Madison County.
REVERSED AND REMANDED.
All the judges concur, except MONTIEL, J., who dissents with opinion.