The appellant, Pete McCray, was convicted of trafficking in cocaine, in violation of § 13A-12-231, Code of Alabama 1975. He was sentenced as a habitual felony offender to life in prison.
The state's evidence tended to show that on November 15, 1991, Investigator Joe Watson and two other members of the Houston County Sheriff's Department executed a search warrant issued for 1309 Fairlane Drive in Dothan. When the officers approached the front of the residence to serve the warrant, they saw the appellant and another man standing in the front doorway. When the officers stated they were police officers, the two men dashed inside the house and slammed the door. The appellant braced himself against the inside of the door to block the officers' entrance. Watson surprised the appellant by entering the house through a front window. The other officers were then able to force the front door open. After the officers entered the house, the appellant ran to the kitchen. Watson apprehended the appellant as he was opening one of the kitchen cabinets.
Pursuant to their search of the residence, the officers found a substantial quantity of cocaine, marijuana, and drug paraphernalia. A brown paper bag, which contained four plastic bags of a white powdery substance, a measuring spoon, a scale weighing grams, and two packages of mannitol, a mineral commonly mixed with cocaine were found in the kitchen cabinet being opened by the appellant. The investigators also searched the room where the appellant slept. They found a bag containing $695 cash and the appellant's California identification card. They also found 37 bags of marijuana, another bag containing marijuana residue, a saucer, a straw, and a razor blade.
The appellant, two other men, and a female were taken into custody. The appellant and the other individuals were advised of *Page 731 
their rights under Miranda v. Arizona.[1] The appellant admitted that he lived at the residence, but he did not make any other statement at that time.
 I
The appellant contends that the trial court erred in denying his motion to suppress an allegedly coerced statement he made to Investigator Watson. Watson testified that while he was taking the appellant from the sheriff's department in the courthouse to the jail, he asked the appellant if he would be willing to give them the name of his supplier, in exchange for the possibility of a lighter sentence. Watson stated that the appellant refused the deal, but that at this time he admitted that the drugs were his and said that he would have to "go down for it." The appellant maintains that he was coerced by Watson into making this statement. We agree that the appellant's statement was the product of a promise or the hope of a reward, and that, therefore it was coerced.
At the suppression hearing, Investigator Watson testified as follows:
 "I was walking him over to the jail. Between the courthouse and the jail . . . I was talking to him and told him if he would turn in his supplier that, you know, we can talk to the D.A. and see if the D.A. would go along with it; and, you know, we might could help him out if he would turn in his supplier. And he responded to that by saying, 'The stuff is mine; I'll just have to go down for it.' "
(Emphasis added.)
On cross-examination, Watson stated:
 "I just told him that, you know, we were always looking for bigger people; that he had a lot of cocaine; but if he would be willing to turn his supplier in, we might could work a deal with him; that I would have to talk to the D.A. about it first. You know, I just wanted to know if he would be willing."
During his testimony at trial, Watson testified as follows:
 "I explained to [the appellant] that he was being charged with trafficking in cocaine and what the possible fines and punishment would be. I explained to him that we were always after bigger people. No matter how big they were, there was always somebody bigger. And told him that if he would be willing to work with us and turn his supplier in that we could get part or all of his sentence suspended, depending on what we could do. The more he could do, the more we could do. And that, you know, I'd have to talk to the sheriff and D.A. to get everything approved before any deal would be made, and would he be interested in doing anything like that. [The appellant] advised me that, 'No, I can't do that; the stuff is mine; I'll just have to go down for it.' "
(Emphasis added.)
"All extra-judicial statements are deemed involuntary."Smith v. State, 623 So.2d 369, 372 (Ala.Cr.App. 1992). See alsoMitchell v. State, 508 So.2d 1196 (Ala.Cr.App. 1986). Before an accused's inculpatory statement can be received into evidence, the state has to show that the statement was voluntary, that the accused was read his Miranda rights, that he understood these rights, and that he waived those rights. Whitlow v.State, 509 So.2d 252 (Ala.Cr.App. 1987); Malone v. State,452 So.2d 1386 (Ala.Cr.App. 1984). It is undisputed that the appellant was read and waived his Miranda rights. Thus, the question becomes whether the statement was voluntary.
The Supreme Court of Alabama has stated:
 "The true test of voluntariness of extra-judicial confessions is whether, under all the surrounding circumstances, they have been induced by a threat or a promise, express or implied, operating to produce in the mind of the prisoner apprehension of harm or hope of favor; and if so, whether true or false, such confessions must be excluded from the consideration of the jury as having been procured by undue influence."
Guenther v. State, 282 Ala. 620, 623, 213 So.2d 679, 681
(1968), cert. denied, *Page 732 393 U.S. 1107, 89 S.Ct. 916, 21 L.Ed.2d 803 (1969). See also Ex parteMcCary, 528 So.2d 1133 (Ala. 1988). "Any implied promises, however tenuous, render a statement to police involuntary and the product of coercion." Franklin v. State, 621 So.2d 364
(Ala.Cr.App. 1992); Wyatt v. State, 620 So.2d 77 (Ala.Cr.App. 1992). See C. Gamble, McElroy's Alabama Evidence § 200.01(1) (4th ed. 1991).
Here, Investigator Watson's promise to talk to the sheriff and the district attorney to arrange a deal was coercive. "Such a promise, made under these circumstances, would necessarily engender a hope of reward in the appellant's mind."Franklin, 621 So.2d at 367. Although the appellant refused Watson's offer, his statement was a direct response to the offer. Absent Watson's offer, the appellant would not have had the occasion or the reason to make the statement.
Although the appellant's statement was wrongfully received into evidence because it was coerced, the analysis does not end here. We must now determine whether the error was harmless. InArizona v. Fulminante, 499 U.S. 279, 111 S.Ct. 1246,113 L.Ed.2d 302 (1991), the United States Supreme Court held that the harmless error doctrine applied to the admission of coerced confessions. That court stated:
 "When reviewing the erroneous admission of an involuntary confession, the appellate court, as it does with the admission of other forms of improperly admitted evidence, simply reviews the remainder of the evidence against the defendant to determine whether the admission of the confession was harmless beyond a reasonable doubt."
499 U.S. at 310, 111 S.Ct. at 1265. (Emphasis added.)
The harmless error doctrine, as applied to coerced confessions in Fulminante, was defined by the United States Supreme Court in Chapman v. California, 386 U.S. 18,87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The United States Supreme Court stated:
 "In fashioning a harmless-constitutional-error rule, we must recognize that harmless-error rules can work very unfair and mischievous results when, for example, highly important and persuasive evidence or argument, though legally forbidden, finds its way into a trial in which the question of guilt or innocence is a close one. . . . .
 ". . . We prefer the approach of this Court in deciding what was harmless error in our recent case of Fahy v. State of Connecticut, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 [(1963)]. There we said: 'The question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction.' Id., at 86-87, 84 S.Ct. at 230. . . . Certainly error, constitutional error, in illegally admitting highly prejudicial evidence or comments, casts on someone other than the person prejudiced by it a burden to show that it was harmless. It is for that reason that the original common-law harmless-error rule put the burden on the beneficiary of the error either to prove that there was no injury or to suffer a reversal of his erroneously obtained judgment. There is little, if any, difference between our statement in Fahy v. State of Connecticut about 'whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction' and requiring the beneficiary of a constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained. We, therefore, do no more than adhere to the meaning of our Fahy, case when we hold, as we now do, that before a federal constitutional error can be held harmless the court must be able to declare a belief that it was harmless beyond a reasonable doubt.
While appellate courts do not ordinarily have the original task of applying such a test, it is a familiar standard to all courts, and we believe its adoption will provide a more workable standard. . . ."
Chapman, 386 U.S. at 23-24, 87 S.Ct. at 827-28. (Footnotes omitted; emphasis added.) "In order for the harmless error doctrine to be applied in this situation, the evidence against the accused must be overwhelming." Smith v. State,623 So.2d 369, 372 (Ala.Cr.App. 1992). *Page 733 
This is not a case where the appellant's confession was the most incriminating evidence presented against him at trial. Compare the following cases in which this court has found no harmless error in the admission of a coerced statement. InSmith v. State, supra, the only evidence other than the coerced confession linking the defendant to the crime was a fingerprint found on a stolen car and his co-defendant's testimony. InWyatt, supra, the only other evidence against the defendant was the testimony of the state's informant, whose credibility was at issue, and a videotape of the drug transaction, which we ruled should also not have been received into evidence.
In this case, there was both eyewitness testimony and physical evidence linking the appellant to the cocaine and the marijuana. Investigator Watson testified that when he approached the house to serve the search warrant the appellant closed the front door and held it shut. After the officers were able to enter the house, the appellant ran into the kitchen and tried to open a kitchen cabinet. A bag containing cocaine and drug paraphernalia was later discovered on a shelf in that kitchen cabinet. The officers also found 37 bags of marijuana and other drug paraphernalia in the bedroom where the appellant slept. The statement of the appellant was therefore not the most incriminating evidence presented against the appellant. The facts in this case demonstrate the reason behind the application of the harmless error doctrine to the admission of coerced confessions.
This court applied the harmless error doctrine to the receipt of an involuntary statement in Howard v. State, 586 So.2d 289,293 (Ala.Cr.App. 1991). Judge Patterson stated: "We, as an appellate court, are mindful, in applying the harmless error rule here, that we should do so with extreme caution because of the well-known effect a confession has on a jury. See Arizonav. Fulminante, 499 U.S. 296, 111 S.Ct. at 1258." Here, we should and do apply the harmless error doctrine. We are convinced, in light of all the other evidence presented against the appellant, that the receipt of the confession into evidence was "harmless beyond a reasonable doubt."
 II
The appellant also contends that the trial court erred in denying his challenge for cause of six prospective jurors, because those jurors indicated that "they thought that law enforcement officers would more likely be telling the truth."
This issue has not been adequately preserved for our review. The record does not reveal the question asked of the prospective jurors or the prospective jurors' answers to the question. "It is the appellant's duty to provide this court with a complete record on appeal." Knight v. State,621 So.2d 394 (Ala.Cr.App. 1993). See also Holder v. State, 584 So.2d 872
(Ala.Cr.App. 1991). We will not assume error from a silent record. Hutchins v. State, 568 So.2d 395 (Ala.Cr.App. 1990).
Further, even if the prospective jurors stated "that they thought that law enforcement officers would more likely be telling the truth," this statement by itself is not a sufficient reason for granting a challenge for cause. If a " 'juror . . . unquestionably credit[s] the testimony of law enforcement officers over that of [a] defense witnesses [that juror] is not competent to serve.' " Uptain v. State,534 So.2d 686, 687 (Ala.Cr.App. 1988), quoting State v. Davenport,445 So.2d 1190, 1193-94 (La. 1984). That question cannot be answered from looking at the inadequate record.
For the foregoing reasons, the judgment in this cause is due to be affirmed.
AFFIRMED.
PATTERSON and McMILLAN, JJ., concur.
BOWEN, P.J., concurs specially with opinion, in which MONTIEL, J., joins.
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602,16 L.Ed.2d 694 (1966).