The appellant, Antonio Tevereus Smith,[1] was convicted of murder, attempted murder, shooting into an occupied dwelling and receiving stolen property in the third degree. He was sentenced to respective terms of 25 years, 20 years, 3 years, and 3 years. The 25-year and the 20-year terms were to run concurrently, and the 3-year terms were to run consecutively.
As regards "time standards", this case exemplifies a dilemma which is encountered by appellate courts. Although the notice of appeal was filed on November 22, 1991, the completed record was not filed until May 15, 1992. The last brief was filed August 7, 1992, and to comply with the American Bar Association time standard of 280 days from notice of appeal to opinion, this opinion should have been released by August 24, 1992. The earliest date we could release this case after submission was September 30, 1992, beyond the date to meet the time standards.
The events that are the subject of this case and appeal occurred between 12:00 a.m. and 1:00 a.m. on the morning of August 22, 1990. The state's evidence tended to show that sometime during the evening of August 21, Ernestine Mason's car, a 1980 green four-door Buick Century, was stolen.
Prior to midnight on the evening of August 21, 1990, several people had gathered on the front porch of Bobby Crim's house on North 20th Street in Birmingham. Traci Miller had dozed off and was awakened around midnight by a loud explosion. She looked down and saw that she and Eric Goree, the victim, were both covered with blood and glass. Miller had been hit by shotgun pellets in the right arm, left hand, and rib cage. Goree had been hit by pellets all over his body. Both Miller and Goree were taken to a local hospital, where Goree later died as a result of his wounds. Miller was treated and released.
Crim testified that between 12:30 a.m. and 12:50 a.m. he saw a green four-door car pull up in front of his house and stop. He saw a *Page 371 
shotgun pointed out of the rear passenger side window and another gun appeared from the front passenger side window. Both weapons were fired in the direction of his house.
Shortly after the shooting, police were called and a description of the car was broadcast over the police radio. Officers Jerome Green and Frederick Alexander, of the Birmingham Police Department, attempted to stop a car occupied by three black males and matching the description of the car broadcast over the radio as he was proceeding to the scene of the shooting. He saw the car make an illegal lane change, and he pulled behind the car and turned on his flashing lights. The car sped away. Green gave chase for several blocks until it stopped in an alley. Three people jumped from the car and started running from the scene. The appellant was apprehended about 10 blocks from the scene of the shooting by Officer Danny Wynn of the Birmingham Police Department, who was also on the lookout for the suspects. Officer Green found a sawed-off shotgun and a .22 caliber rifle beside the abandoned car which was found to be the car that had been stolen earlier. A fingerprint of the appellant's was also found on the stolen car.
Doris Chilles testified that between 12:30 a.m. and 1:00 a.m. on the morning of August 22, 1990, she was awakened by a loud blast. She discovered that several shots had been fired into her house, where she and her two sons, Ed and James Harris, had been sleeping. Chilles stated that pellets were all over the house.
Demetrius Sanders and David Starks were with the appellant on the night of the shooting. Demetrius Sanders testified that the appellant and Starks picked him up at his girlfriend's house in a green four-door car. They proceeded to Sanders house, where he obtained a .20 gauge shotgun and .22 caliber rifle. The shotgun belonged to the appellant, but he kept it at Sander's house. The three were riding around, with Sanders driving, when they drove to the Druid Hills area and saw several people gathered on the porch of one of the houses. Sanders thought that one of the men on the porch was an individual with whom he had earlier that day, in the appellant's presence, had an altercation. Sanders passed the house, turned around, and stopped in front of Crim's house. The appellant fired his shotgun once from the rear passenger window, and Starks fired his rifle about four times from the front passenger side. They sped away and were heading towards Sanders's house when they spotted Ed Harris's house. Both Starks and the appellant fired into Ed Harris's house. Shortly thereafter the car was spotted by police, and the appellant was apprehended.
The appellant testified in his own behalf at trial and stated that he and Starks found the stolen Buick automobile at Evergreen Bottom, in Birmingham. He knew that the car was stolen. They both drove over to get Sanders and proceeded to drive around. Smith stated that he fired the gun into a house next to Starks's that he thought was vacant. After this they drove around the Druid Hills area where they stopped in front of Crim's house. He fired his shotgun once at Crim's house and Starks also fired his rifle. Smith testified that he did not intend to kill anyone.
 I
The appellant contends that the trial court should not have allowed his statement to be received into evidence because the police did not comply with Rule 11(A), A.R.Juv.P.
According to Rule 11(A), A.R.Juv.P. a child who is taken into custody must not only be informed of his Miranda,[2] rights but he must also be informed that he has the right to communicate with his parents or guardian and that "if necessary, reasonable means will be provided for him to do so."
The evidence at the suppression hearing showed that the appellant was arrested and was brought to the police station at approximately 2:00 a.m. Officer Frederick Alexander, of the Birmingham Police Department, who read the appellant his juvenile rights stated that after he read those rights he asked the appellant if there was anyone he *Page 372 
wished to speak to. The appellant told Alexander that he would like to talk with his grandmother. Alexander, when pressed on cross-examination, stated that before calling the appellant's grandmother he did ask the appellant about the stolen car. Consequently, after the appellant expressed his desire to talk with his grandmother, the police continued to question him about the incident. Several hours later, the appellant was again questioned. Initially, we were concerned about this second questioning of the appellant. However, upon further examination of the record, we conclude that the first questioning violated the appellant's rights.
All extra-judicial statements are deemed involuntary.Mitchell v. State, 508 So.2d 1196 (Ala.Cr.App. 1986). Before an accused's confession can be received into evidence, the state must show that the statement was made voluntarily and that the suspect was read and that he understood his Miranda rights.Whitlow v. State, 509 So.2d 252 (Ala.Cr.App. 1987); Malone v.State, 452 So.2d 1386 (Ala.Cr.App. 1984). Here, because the individual was a juvenile, an additional step must be followed. The state must also show that the juvenile was told that he had the right to communicate with his parent or guardian. Rule 11(A), A.R.Juv.P.
The appellant was questioned after he exercised his right and requested to speak to his grandmother before answering questions, a right that this court has recently determined to be the equivalent of an adult's requesting to speak to his attorney. E.C. v. State, 623 So.2d 364 (Ala.Cr.App. 1992). This right was violated by the authorities when they continued to question the juvenile. The statement made to the police was therefore due to be suppressed. While a juvenile may waive the right to talk to a parent or guardian, W.T.K. v. State,598 So.2d 33 (Ala.Cr.App. 1992), there is no indication that the appellant made such a waiver in this case.
In some limited instances, receipt into evidence of an illegally obtained confession may be considered harmless error. The United States Supreme Court has applied the harmless error doctrine to confessions obtained in violation ofMiranda and to coerced confessions. Arizona v. Fulminante,499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991); Milton v.Wainwright, 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972). Receipt of an illegally obtained confession is harmless if the court can find, based on the circumstances of the case, that admittance of the confession was harmless "beyond a reasonable doubt." Fulminante; Milton. This harmless error doctrine was defined in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824,17 L.Ed.2d 705 (1967). The United States Supreme Court stated:
 "In fashioning a harmless-constitutional-error rule, we must recognize that harmless-error rules can work very unfair and mischievous results when, for example, highly important and persuasive evidence or argument, though legally forbidden, finds its way into a trial in which the question of guilt or innocence is a close one. . . . .
 ". . . We prefer the approach of this Court in deciding what was harmless error in our recent case of Fahy v. State of Connecticut, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 [(1965)]. There we said: 'The question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction.' Id., at 86-87, 84 S.Ct. at 230. . . . Certainly error, constitutional error, in illegally admitting highly prejudicial evidence or comments, casts on someone other than the person prejudiced by it a burden to show that it was harmless. It is for that reason that the original common-law harmless-error rule put the burden on the beneficiary of the error either to prove that there was no injury or to suffer a reversal of his erroneously obtained judgment. There is little, if any, difference between our statement in Fahy v. State of Connecticut about 'whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction' and requiring the beneficiary of a constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained. We, therefore, do no more than adhere to the meaning of our Fahy, case *Page 373 when we hold, as we now do, that before a federal constitutional error can be held harmless the court must be able to declare a belief that it was harmless beyond a reasonable doubt. While appellate courts do not ordinarily have the original task of applying such a test, it is a familiar standard to all courts, and we believe its adoption will provide a more workable standard. . . ."
Chapman, 386 U.S. at 23-24, 87 S.Ct. at 827-28. (Footnotes omitted, emphasis added.)
In order for the harmless error doctrine to be applied in this situation, the evidence against the accused must be overwhelming. In Milton, a statement made by the defendant without the benefit of Miranda was received into evidence. The Supreme Court held that the admission of the statement was harmless because "its admission was harmless beyond a reasonable doubt." Milton, 407 U.S. at 372, 92 S.Ct. at 2175. In Milton, the confession that should have been suppressed was made before the defendant he was indicted; however, three legally obtained statements were made after he was indicted. The victim in Milton was killed while a passenger in Milton's car. The victim died by drowning when the car Milton was driving went into a river. The rear windows and doors were locked by the driver's control, preventing them from being opened by passengers. Milton jumped from the car, leaving the victim unable to exit the vehicle. The evidence in Milton
unequivocally connected the appellant with the murder.
In this case, the only evidence connecting the appellant to the crime was a fingerprint on the car and his co-defendant's testimony. The fingerprint did not directly connect the appellant to the shooting and the co-defendant was an individual who had a personal interest. We have no other eyewitness testimony here and very little direct evidence.
We will not say that the error was harmless beyond a reasonable doubt.
 II
The appellant asserts that the trial court erred in failing to grant his application for treatment under the Youthful Offender Act. The appellant maintains that the circuit court denied the application without any investigation. However, this assertion is not supported by the evidence.
 " 'When deciding whether to grant youthful offender status, it is expected that the nature of the crime charged, along with prior convictions of the defendant, will be considered, as well as any other matters deemed relevant by the court. No prescribed format is required. Neither is the trial court required to articulate on the record the reasons for denying youthful offender status to a defendant.' "
Self v. State, 512 So.2d 811, 814 (Ala.Cr.App. 1987), quoting from Goolsby v. State, 492 So.2d 635, 636 (Ala.Cr.App. 1986).
Whether to grant or deny youthful offender status is a matter left to the "absolute" discretion of the circuit court.Self; Goolsby; Morgan v. State, 363 So.2d 1013
(Ala.Cr.App. 1978). We hold that the trial court's decision to deny youthful offender treatment was not arbitrary and there was no abuse of the court's discretion in denying appellant's application for youthful offender treatment.
 III
The appellant next contends that the trial court erred in consolidating the charges against him. He maintains that he was unduly prejudiced and was denied a fair trial by the circuit court's granting the state's motion to consolidate the four charges against him.
Consolidation of offenses for trial is specifically provided for by Rule 13.3(c), A.R.Crim.P. This Rule states:
 "If offenses or defendants are charged in separate indictments, informations, or complaints, the court on its own initiative or on motion of either party may order that the charges be tried together or that the defendants be joined for the purposes of trial if the offenses or the defendants, as the case may be, could have been joined in a single indictment, information, or complaint. However, the court shall not order that the offenses or the defendants, as the case may be, be tried together without first providing the defendant or defendants *Page 374 
and the prosecutor an opportunity to be heard."
(Emphasis added.)
The record in this case reflects that a hearing was held on the state's motion to consolidate the charges. Thus, we need only determine whether the offenses 1) were of the same or similar character, or 2) involved the same conduct or were otherwise connected in their commission, or 3) were alleged to be part of a common scheme or plan. Rule 13.3(a), A.R.Crim.P., and Yelder v. State, [Ms. 3 Div. 212, October 11, 1991], 1991 WL 238088, *2 (Ala.Cr.App. 1991), reversed on other grounds, [Ms. 1910345, August 14, 1992], 1992 WL 192836 (Ala. 1992). "Perhaps the most important consideration is the answer to the following question: If the offense were tried separately, would evidence of each offense be admissible in the trial for the other offense?" Yelder, 1991 WL 238088, *2.
Here, the offenses all occurred within a relatively short time. Evidence of each offense would have been admissible in any of the four proceedings as part of the res gestae or as part of a common scheme or plan. Inmon v. State, 585 So.2d 261
(Ala.Cr.App. 1991).
Further, as this court stated in Cowart v. State,488 So.2d 497 (Ala.Cr.App. 1985):
 "For this court to rule that a trial judge abused his discretion in this matter, an appellant has a heavy burden of establishing that he was unable to obtain a fair trial without a severance and that he suffered compelling prejudice which the trial court could not prevent"
488 So.2d at 501. (Emphasis added.)
The appellant has failed to show that he has suffered any "compelling prejudice" as a result of the consolidation of the four charges against him. The trial court did not abuse its discretion in granting the motion to consolidate. Ex parteHinton, 548 So.2d 562 (Ala.), cert. denied, 493 U.S. 969,110 S.Ct. 419, 107 L.Ed.2d 383 (1989).
 IV
The appellant next argues that the trial court erred in not granting his motion for an independent court-appointed psychologist to evaluate his competency to stand trial.
Section 15-16-21, Code of Alabama 1975, states:
 "If any person charged with any felony is held in confinement under indictment and the trial court shall have reasonable ground to doubt his sanity, the trial of such person for such offense shall be suspended until the jury shall inquire into the fact of such sanity. . . ."
(Emphasis added.)
Initially, whether reasonable grounds exist to doubt a defendant's sanity is a question left to the discretion of the trial court. "The trial court is, thus, the 'screening agent' for mental examination requests." Reese v. State,549 So.2d 148, 150 (Ala.Cr.App. 1989). Rule 11.3(a), A.R.Crim.P. states: "If the circuit court determines that reasonable grounds for an examination exist, it shall appoint a psychiatrist or psychologist to examine the defendant. . . ."
Before ruling on the motion, the circuit court stated that Judge Ross of the family court had found no evidence of retardation or mental illness. A letter from Dr. Blotcky of the family court indicated that he agreed with Judge Ross's determination. Dr. Rosencrans, a psychologist, had also talked with the appellant and did not find evidence of mental retardation. The trial court committed no error in denying the appellant's motion for an independent evaluation of his competency.
 V
The appellant next argues that the trial court erred in not granting him a continuance because one of the defense witnesses failed to appear at trial. Defense counsel stated at the end of his case that one of the individuals who was present when the shooting at Crim's house occurred failed to testify. The trial court said that the defense would have until the next day at 9:00 a.m. to produce that witness. The witness could not be located, and defense counsel asked for another continuance. The circuit court denied the motion. Defense counsel stated that he would find the witness sooner or later, but he *Page 375 
could give no indication of how long it would take to locate this witness, who had twice been subpoenaed to appear. Further, there was absolutely no showing as to the content of the missing witness's testimony.
The appellant has failed to show that he was prejudiced as a result of the denial of the motion for continuance. The denial of a motion for continuance will not be reversed unless the court has abused its discretion. Daniels v. State,621 So.2d 335 (Ala.Cr.App. 1992); Canada v. State, 421 So.2d 140
(Ala.Cr.App. 1982). The judicial system has a fundamental duty to protect its own functioning. We must balance the right of a defendant to obtain a fair trial with the right of the general public to have its business dispatched efficiently. Here, because the witness had been subpoenaed and defense counsel made absolutely no showing of what the testimony of the missing witness would be, we cannot say that the trial court abused its discretion in denying appellant's request for a continuance.
 VI
The appellant next argues that the trial court erred in denying his motion for independent testing of the shotgun at the state's expense, which would allegedly establish that the shotgun blast could not have killed Goree because of the 36-foot distance between the car and the house.
As the state correctly argues, the only time that a defendant has a right to have physical evidence independently examined is when it is critical to his defense and subject to varying expert opinion. Ex parte Grayson, 479 So.2d 76 (Ala.), cert. denied, 474 U.S. 865, 106 S.Ct. 189, 88 L.Ed.2d 157 (1985).
Here, the appellant admitted on the stand that he fired the gun. Any evidence concerning the distance at which a shotgun blast would be lethal was not critical to the appellant's defense. The fact that a shotgun blast from 36 feet can be lethal is a matter within common knowledge and not an appropriate subject for expert testimony. The movant did not offer to participate in the testing. The trial court committed no error in denying the appellant's motion for independent testing of the shotgun at the state's expense.
 VII
The appellant next argues that there was no probable cause to arrest him on the night of the shooting. The evidence at the suppression hearing showed that on the night of the shooting a description of the car involved in the shooting was broadcast over the police radio. Officer Alexander, who was on his way to the scene of the shooting, saw a car matching the description. He started to follow it and reported the license plate number after he observed the car make an illegal lane change. When he pulled behind the car, the car sped off and stopped in an alley several minutes later. After all of the occupants of the car fled, the appellant was apprehended by Officer Wynn several blocks away and was brought back to the abandoned car. Officer Alexander identified the appellant as one of the persons who fled from the car. A shotgun and a .22 caliber rifle were found next to the abandoned car.
 " 'In dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' "
Illinois v. Gates, 462 U.S. 213, 231, 103 S.Ct. 2317, 2328,76 L.Ed.2d 527 (1983), quoting Brinegar v. United States,338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949). See alsoCarter v. State, 435 So.2d 137, 139 (Ala.Cr.App. 1982). There was sufficient probable cause to arrest the appellant.
 VIII
The appellant next argues that the trial court erred in making the following comment concerning the credibility of a witness. The following occurred during the questioning of Bobby Crim:
 "The Court: If you'll listen to him. If he's telling the truth, and I have no reason — well, I don't know about that. That's something I don't have to worry about."
After this occurred, defense counsel asked for a mistrial, stating that the court impermissibly commented on the credibility of a *Page 376 
witness. Immediately after the objection, the trial court gave the following instruction to the jury:
 ". . . What I am trying to tell you is that a judge trying a case should never, and I did not intend to and I don't think I said it, but I want to make sure it's understood perfectly. A judge who is trying a case like this, or any case, should never comment on the evidence in Alabama. Should never say whether a man is telling the truth or not telling the truth, or the witness is telling the truth or not telling the truth. That is strictly up to you, as you have heard when we started this case and as you will hear time and time again. You decide the facts. When I said if he is telling the truth, that didn't mean to comment that he was telling the truth or he wasn't telling the truth. That is strictly up to you all as judges of the facts."
"There is a prima facie presumption against error when a trial judge promptly charges the jury to disregard improper remarks." Peoples v. State, 510 So.2d 554, 565
(Ala.Cr.App. 1986), aff'd 510 So.2d 574 (Ala.), cert. denied,484 U.S. 933, 108 S.Ct. 307, 98 L.Ed.2d 266 (1987). Even if the above comment was understood by the jury to be a comment on the witness's credibility, we believe that any possible prejudice that may have occurred was cured by the court's prompt and thorough instructions to the jury. No reversible error occurred here.
 IX
The appellant contends that the trial court erred in refusing his 20 requested jury instructions. However, the appellant has failed to preserve error in the denial of all 20 charges because he did not state specific grounds for the denial of each requested charge before the jury retired. Rule 21.2, A.R.Crim.P., states:
 "No party may assign as error the court's giving or failing to give a written instruction, or the giving of an erroneous, misleading, incomplete, or otherwise improper oral charge, unless he objects thereto before the jury retires to consider its verdict, stating the matter to which he objects and the grounds of his objection. . . ."
The appellant argues on appeal that the trial court erred in not charging the jury on reckless endangerment. However, this was never brought to the attention of the trial court, thus, according to Rule 21.2, the issue is not preserved for our review.
The appellant also questions on appeal the court's instruction dealing with complicity. However, the grounds assigned on appeal were not the grounds argued at trial. Specific grounds for objection waive all others not specified.Rika v. State, 587 So.2d 1054 (Ala.Cr.App. 1991).
Last, the appellant questions the court's instruction on attempted murder. "A trial court has broad discretion in formulating its jury instructions, provided they are an accurate reflection of the law and facts of the case." Coon v.State, 494 So.2d 184, 186 (Ala.Cr.App. 1986). The circuit court's instructions on attempted murder were accurate statements of the applicable law. No error occurred here.
For the reasons stated in part I of this opinion, the judgment in this case is reversed and the cause remanded to the Circuit Court for Jefferson County for proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
All the Judges concur.
[1] The appellant, a juvenile, was transferred to the circuit court for trial as an adult.
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602,16 L.Ed.2d 694 (1966).