[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1016 
The appellant, Patrick Johnathan Fisher, was convicted of robbery in the first degree, a violation of § 13A-8-41, Code of Alabama 1975. He was sentenced to 20 years in the penitentiary.
The state's evidence tended to show that on December 27, 1991, at 12:25 a.m., the appellant and another man robbed Daniel C. McCullough, Jr., at gunpoint while McCullough was conducting a transaction at a bank automatic teller machine (ATM). McCullough testified that he had gone to the ATM at a bank in Homewood to make three deposits. After he had made two deposits, two men with guns approached him. One was white and the other was black. He testified that one man had a sawed-off shotgun and that the other had a "silvery color" pistol. He testified that they pointed the guns at his head and that one man said, "Give me your money, motherfucker." McCullough said that he gave the men his wallet and the two deposit slips. They then pushed him to the ground and ran in separate directions. As he was running away, the white man dropped some shotgun shells and stopped to pick them up. McCullough went to a restaurant next door where an employee called the police.
Officer J.T. Ross of the Homewood Police Department testified that he responded to the robbery call and that he made out a report. He further testified that at 3:01 a.m. the same morning he responded to a disturbance call at a apartment near the bank where the robbery had occurred. He and two other Homewood police officers, Officer Baker and Officer Mark Landrum, entered the apartment building. Ross testified that as they approached the door of the apartment where the noises indicating a disturbance were coming from, he heard loud voices inside. He heard someone state, "Let's go do another one. Let's go rob someone like we just did up the street. Get the gun. Let's go to Krystal [restaurant] and do someone and get some money." At this time, Ross decided to call for more backup. Three to four minutes later three more officers arrived. Four officers continued to wait outside the door of the apartment because the statements Ross heard led him to believe someone was about to leave the apartment. Two officers waited outside behind the apartment building. After about five minutes, the apartment door opened and a black male walked into the hallway. Ross testified that the officers identified themselves and told him to show his hands. The subject ran back into the apartment and shut the door. Ross stated that he and the officers heard noise and commotion inside the apartment. The officers in the back of the apartment building reported to Ross that some people were breaking out the back windows in an attempt to escape. However, burglar bars on the windows prevented them from escaping. *Page 1017 
Ross testified that about five minutes later, Seargent Costa of the Homewood police asked the residents to open the door. The door opened and three or four men came out into the hall. A few of the officers began to pat these men down for weapons while the rest of the officers entered the apartment. Ross testified that when he entered the apartment he found a credit card and deposit envelopes with the victim's name on them on the floor. The officers also seized McCullough's wallet, a sawed-off shotgun, a .380 semiautomatic pistol, a revolver, and a .25 caliber semiautomatic pistol.
McCullough later identified the appellant in lineups and from photographs taken by the camera at the ATM.
The appellant raises three issues on appeal.
 I
The appellant first contends that the trial court erred in denying his motion to suppress a statement he made to Sergeant Edward McKenzie and Officer Mark Landrum of the Homewood Police Department. More specifically, he contends that he was coerced by the police into making the statement in violation of his Fifth Amendment privilege against self-incrimination.
 " 'All extra-judicial statements are deemed involuntary.' Smith v. State, 623 So.2d 369, 372
(Ala.Cr.App. 1992). See also Mitchell v. State, 508 So.2d 1196 (Ala.Cr.App. 1986). Before an accused's inculpatory statement can be received into evidence, the state has to show that the accused was read his Miranda rights, that he understood those rights, and that he waived those rights. Whitlow v. State, 509 So.2d 252 (Ala.Cr.App. 1987); Malone v. State, 452 So.2d 1386 (Ala.Cr.App. 1984)."
McCray v. State, 629 So.2d 729, 731 (Ala.Cr.App. 1993).
In this case, it is undisputed that the appellant was read his Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602,16 L.Ed.2d 694 (1966) rights, and that he waived those rights. Thus, the only question becomes whether the statement was voluntary.
One statement by Sergeant McKenzie that the appellant contends rendered his statement involuntary occurred during the following discussion:
 "[The appellant]: . . . No matter, what I'm gonna do time for this. Even though its my first offense, I know I'm in trouble.
 "MCKENZIE: Patrick, we really can't tell you that for sure. We can't tell you that for sure.
"[The appellant]: My bail is gonna be real high.
 "MCKENZIE: Huh, I can say, I can say this, you know, if you're cooperative, and we go and tell the district attorney that you were cooperative, you know the district attorney is the one that has the authority to make any deals, cut any slack, huh, Sergeant Tully and myself, we don't have that authority, all we can do is tell the district attorney, 'Yes, Patrick was cooperative. Yes, Patrick admitted his part in the robbery, and, huh, he was very helpful.' And then the district attorney's office will have to take all that in consideration. You understand what I'm saying?"
The officers implied that the appellant might get better treatment if he cooperated with them. "Any implied promises, however, tenuous, render a statement to police involuntary and the product of coercion." Franklin v. State, 621 So.2d 364
(Ala.Cr.App. 1992); Wyatt v. State, 620 So.2d 77
(Ala.Cr.App. 1992). See C. Gamble, McElroy's Alabama Evidence, § 200.01(1) (4th ed. 1991). Here, the officer's statements were coercive because "[s]uch a promise, made under these circumstances, would necessarily engender a hope of reward in the appellant's mind." McCray, 629 So.2d at 732; Franklin, 621 So.2d at 367.
Although the appellant's statement was wrongfully received into evidence because it was coerced, the analysis does not end. The question becomes: Was the receipt of the statement into evidence harmless error? In Arizona v. Fulminante,499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991), the United States Supreme Court held that the harmless error doctrine could be applied to coerced confessions received into evidence at trial. That Court stated: *Page 1018 
 "When reviewing the erroneous admission of an involuntary confession, the appellate court, as it does with the admission of other forms of improperly admitted evidence, simply reviews the remainder of the evidence against the defendant to determine whether the admission of the confession was harmless beyond a reasonable doubt."
499 U.S. at 310, 111 S.Ct. at 1265, 113 L.Ed.2d at 332. (Emphasis added.) "In order for the harmless error doctrine to be applied in this situation, the evidence against the accused must be overwhelming." McCray, 629 So.2d at 732; Smith v.State, 623 So.2d 369, 372 (Ala.Cr.App. 1992), cert. denied, ___ U.S. ___, 114 S.Ct. 650, 126 L.Ed.2d 607 (1993).
In this case, the appellant's confession was not the most incriminating evidence presented against him at trial. The ATM camera took photographs of him participating in the robbery and those photographs were received into evidence. The victim McCullough identified the appellant as one of the robbers. Also, the victim's credit card, wallet, and deposit envelopes were found in the apartment where the appellant was arrested. Furthermore, with regard to the harmless error analysis, the officers did not make the coercive statement until late in the interview at which time the appellant had already acknowledged his participation in the robbery. Therefore, his confession was in no way coerced by any implied promises of the interrogating officers.
In this case, we should and do apply the harmless error doctrine. We are convinced, in light of all the other evidence presented against the appellant, that the receipt of the confession into evidence was "harmless beyond a reasonable doubt." Fulminante, 499 U.S. at 310, 111 S.Ct. at 1265,113 L.Ed.2d at 332.
 II
The appellant contends that the trial court erred in denying his motion to suppress evidence seized during the warrantless search of his codefendant's apartment.
 " 'When a motion to suppress evidence in a criminal case is based on the ground that the evidence was obtained in violation of the Fourth Amendment, one issue is whether the movant has standing to assert the claim and to seek the remedy of exclusion. See LaFave, 4 Search and Seizure § 11.3 (2d ed. 1987). The rights afforded protection by the Fourth Amendment are personal rights. See Simmons v. United States, 390 U.S. 377, 389, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1967). To show that a party has standing to object to a search, the party must have a possessory interest in the premises searched. Rakas v. Illinois, 439 U.S. 128
[132], 99 S.Ct. 421, 425, 58 L.Ed.2d 387 (1978). . . . The " 'capacity to claim the protection of the [Fourth] Amendment depends not upon a property right in the invaded place but upon whether the area was one in which there was a reasonable expectation of freedom from governmental intrusion.' " Mancusi v. DeForte, 392 U.S. 364, 368, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1967), quoting Katz v. United States, 389 U.S. 347, 352, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). "A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." Rakas, 439 U.S. at 134, 99 S.Ct. at 425.' "
Draper v. State, 641 So.2d 1283, 1285 (Ala.Cr.App. 1993), quoting Williams v. State, 601 So.2d 1062, 1070
(Ala.Cr.App. 1991).
Here, the state's evidence tended to show that the appellant did not have a possessory interest in the apartment searched. Rather, he had originally come to the apartment to drink and attend a party with some friends. The evidence tended to show that he later participated in the robbery and returned to the apartment with the stolen items.
The appellant contends that he has standing to assert the claim that the items were seized in violation of the Fourth Amendment on the authority of Minnesota v. Olson, 495 U.S. 91,110 S.Ct. 1684, 109 L.Ed.2d 85 (1990), which held that an overnight guest at a residence had a legitimate expectation of privacy protected by the Fourth Amendment and that that expectation conferred standing *Page 1019 
to challenge a warrantless entry to the residence that resulted in an arrest. However, the appellant apparently was not an overnight guest at the apartment. The state's evidence tended to show that there were 12 to 15 people at the apartment who were there for a party, not to spend the night.
Although the state did not address the issue whether the appellant had standing to assert the claim, "[w]e have previously held that a trial court's ruling will be affirmed if it was correct" and according to law. Nicks v. State,521 So.2d 1018 (Ala.Cr.App. 1987), aff'd, 521 So.2d 1035 (Ala.), cert. denied, 487 U.S. 1241, 108 S.Ct. 2916, 101 L.Ed.2d 948 (1988). Therefore, we hold that the appellant did not have standing to challenge the warrantless search of the apartment in which he was arrested.
 III
The appellant last contends that the trial court erred in overruling his objection to the receipt into evidence of photographs taken by the ATM camera. More specifically, he contends that the state failed to authenticate the photographs and that the prejudicial effect of the allegedly unauthenticated photographs outweighed their probative value.
McCullough testified that the photographs depicted the events that occurred during the robbery.
 "A photograph is admissible when properly authenticated — when a witness testifies that the picture as exhibited accurately reproduces objects or actions which he observed. . . . Consequently, it is not necessary to produce the photographer or other person present who saw the location of the camera where this is reasonably apparent from the photographs."
Pope v. State, 586 So.2d 1003, 1004 (Ala.Cr.App. 1991). See C. Gamble, McElroy's Alabama Evidence, § 123.03(3) (4th ed. 1991). Here, the victim's testimony was sufficient to authenticate the photographs.
As to the appellant's contention that the photographs are prejudicial, all evidence that tends to make out the case of one litigant is prejudicial to the opposing litigant. If it were not in some way prejudicial to the opposing party, one would question its relevance. An authenticated photograph may be received into evidence if it tends to "prove or disprove some disputed issue, . . . illustrate or elucidate some relevant fact or . . . corroborate or disprove some other evidence offered or to be offered." C. Gamble, McElroy'sAlabama Evidence, § 123.03(1) (4th ed. 1991).
We hold that the trial court did not err in receiving the photographs into evidence.
For the foregoing reasons, the judgment in this case is due to be, and it is hereby, affirmed.
AFFIRMED.
All the Judges concur.